William WHITE; Frances White; Bill White Enterprises, Inc., Plaintiffs–Appellees,

v.

COUNTY OF NEWBERRY, SOUTH CAROLINA, Defendant–Appellant.

William WHITE; Frances White; Bill White Enterprises, Inc., Plaintiffs–Appellants,

v.

COUNTY OF NEWBERRY, SOUTH CAROLINA, Defendant–Appellee.

Nos. 92–1430, 92–1503.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 27, 1992.

Decided Feb. 5, 1993.

Bradford N. Wyche, Wyche, Burgess, Freeman & Parham, P.A., Greenville, SC (J. Theodore Gentry, Greenville, SC, Gary T. Pope, Pope & Hudgens, Newberry, SC, on brief), for plaintiffs-appellants.

John Charles Ormond, Jr., McNair Law Firm, P.A., Columbia, SC (Richard M. Smith, on brief), for plaintiffs-appellees.

Before ERVIN, Chief Judge, and RUSSELL and WILKINS, Circuit Judges.

## OPINION

ERVIN, Chief Judge:

William White, Mary Frances White, and Bill White Enterprises, Inc. ("Whites")

brought an action against the County of Newberry, South Carolina ("County"), alleging claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and state law claims of inverse condemnation, negligence, strict liability, and trespass, all to recover response costs and monetary damages resulting from the County's alleged discharge of contaminants into the Whites' ground water and well. A jury awarded the Whites $172,000.00 in damages under the theory of inverse condemnation. The district court dismissed the negligence, trespass, and strict liability actions under state law, and entered a judgment in the County's favor on the federal CERCLA claim.

The County appeals the denial of its renewed motion for judgment as a matter of law despite the adverse judgment of the district court,[1] and the Whites cross-appeal only the adverse outcome on their CERCLA claim. We reverse the denial of the County's motion for judgment as a matter of law, but affirm the district court's holding concerning the Whites' CERCLA claim.

I

William and Mary Frances White own[2] and operate Bill and Fran's Restaurant at the intersection of Interstate 26 and South Carolina Highway 34 in Newberry County, South Carolina. The County owns the adjacent property and operates there the Newberry County Public Works Maintenance Facility ("maintenance facility"), where the County services and performs routine maintenance on county-owned vehicles. The site also houses facilities for a jail, a nursing home, a hog farm, and an animal shelter, all of which have been abandoned for many years. The Newberry County Water and Sewer Authority ("Authority") owns a small parcel of land circumscribed by the County's property, but situated close to the Whites' property. The Authority's property contains a 510–foot deep well, which provides the public water supply for county residents in the area. The County itself is not affiliated with the Authority. Neighboring landowners include the Newberry Inn and a Phillips 66 self-service gas station.

In March 1989 the South Carolina Department of Health and Environmental Control ("DHEC") began analyzing public water supplies throughout the state for volatile organic compounds ("VOCs"). When DHEC detected high levels of VOCs in the Authority's public well, it began an investigation of the surrounding area to determine the source of the VOCs. In July 1989 DHEC sampled the Whites' well and detected the VOC trichloroethylene (TCE) in levels exceeding safe drinking water standards. DHEC then recommended that the Whites discontinue use of their well and transfer to the public water supply system. The Whites first added a filtering system to their well at a cost of $500.00, but when DHEC tests in August 1989 revealed that TCE levels remained unacceptable, the Whites ceased using their well altogether and connected to the public water supply at a cost of $6,000.00.[3]

After detecting the high VOC levels in the Authority's well, the DHEC investigated the County's maintenance facility as a possible source. The investigation culminated in an independent environmental assessment of the maintenance facility, which concluded that any evidence of TCE at the County's facility was inadvertent and not due to County activities. The report stated that

---

1. The County also appeals its alternative motion for a new trial based on the district court's admission of a letter the County alleges is inadmissible hearsay. Because we reverse the district court's denial of the County's renewed motion for judgment as a matter of law, we do not reach the issue regarding its new trial motion.

2. William and Mary Frances White own shares in the restaurant both individually and through the corporation Bill White Enterprises, Inc.

3. The Whites seek to recover the following costs: a $600.00 hook-up fee for joining the community water system; and $200.00 per month for twenty-seven months as reimbursement for the excess costs associated with the water system. The Whites hope to recover the increased monthly costs for each month they are connected to the water system until they are able to sell the restaurant.

[i]t is likely that this [TCE] contamination is the result of off site sources for ·the following reasons: (1) the general topography indicates that the well is upgradient of the facility, (2) no known use of TCE at the County facility, (3) the detection of TCE in the Newberry Inn well on July 31, 1987, and (4) the influence from the County Home Well during pumping.

The Whites conducted their own investigation of the most likely source of TCE. At the investigation's conclusion, they admitted that they have no evidence or personal knowledge that the County ever had used TCE. Their expert, however, testified:

[W]e know that trichloroethylene is used in a Safety Clean [sic] washing apparatus. The fact that we have not established that it was used in Safety Clean [sic] apparatus, washing apparatus at this facility, you know, is beyond my expertise.... I feel in my expertise, the data that has been presented to me, and my evaluation is [the TCE] is coming from the Newberry maintenance facility.

Although the Whites suggested that the use of Safety Kleen at the maintenance facility represented the most likely source of the TCE, they produced evidence that the County might have used degreasing components in its shop and received refrigerators and air conditioning units at its landfill, also possible sources of TCE.

Based on the Whites' beliefs that the County had caused the contamination of their well, the Whites brought a CERCLA recovery action and an action for compensatory damages based on various state law claims against the County. On December 13, 1991, a jury returned a general verdict in the Whites' favor for $172,000.00 on the inverse condemnation claim. Because the parties stipulated that the CERCLA claim involved non-jury matters, the district court reviewed the claim independently and entered an order in favor of the County on the CERCLA cause of action. The district court found that the Whites had failed to prove one element necessary to a successful CERCLA action. In a separate order, the district court denied the County's motion for judgment as a matter of law on the inverse condemnation action.

## II

Before turning to the substantive legal issues this case raises, we must address the County's challenge to the district court's subject matter jurisdiction over the Whites' state law claims. The Whites brought numerous state law claims in conjunction with their CERCLA claim, all of which have been dismissed and are not at issue except for the inverse condemnation claim. The Whites availed themselves of a federal forum for these claims under 28 U.S.C. § 1367(a), which provides that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

■ The County asserts that the district court lacked jurisdiction over the inverse condemnation claim as a matter of law because the CERCLA claim and the inverse condemnation claim do not represent the same case or controversy. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court determined that once a district court had valid jurisdiction over a federal claim, it could, in its discretion, exercise supplemental jurisdiction over additional state claims if they arose out of "a common nucleus of operative fact" such that the plaintiff would ordinarily be expected to try the claims in one judicial proceeding. *Id.* at 725, 86 S.Ct. at 1138; *see also Hales v. Winn–Dixie Stores, Inc.*, 500 F.2d 836, 848 & n. 12 (4th Cir.1974) (stating that supplemental jurisdiction does not encompass claims when one count is "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count").

■ To prevail in a cost-recovery action under CERCLA, the Whites must establish a release or threatened release of a hazardous substance from the County's maintenance facility that caused the Whites to incur response costs that are consistent with the national contingency plan. 42 U.S.C. § 9607(a). To prevail under South Carolina law on their inverse condemnation claim, the Whites must show

(1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for a public use; and (4) the taking has some degree of permanence.

*Rolandi v. City of Spartanburg*, 294 S.C. 161, 363 S.E.2d 385, 387 (1987). Both claims share the common element of showing that the County engaged in an act—a release or an affirmative, positive, aggressive act—that in this case would be the dumping or disposal of TCE in a manner that caused contamination to the Whites' well.

■ Admittedly, the Whites seek two different types of relief—reimbursement through the CERCLA action and monetary damages under the theory of inverse condemnation—but supplemental jurisdiction is not limited to restatements of the same basic ground for recovery. Supplemental claims "may be separate claims, *or* they may merely be different 'counts' or 'grounds' or 'theories' in support of what is essentially a single claim." 28 U.S.C. § 1367 Practice Commentary (emphasis added). The claims need only revolve around a central fact pattern. Here the Whites have presented two claims that revolve around alleged hazardous waste contamination caused by the County. Regardless of the outcome of the case, the two claims' proof will rest on the central issue of whether the County released TCE into the area groundwater. We find this commonality sufficient to support supplemental jurisdiction under section 1367 as a matter of law.

■ The County asserts that, if we find jurisdiction as a matter of law, then the district court abused its discretion by in fact exercising that jurisdiction because the state claim predominates over the CERC-LA claim, making it unsuitable for supplemental jurisdiction. 28 U.S.C. § 1367(c) directs that

[t]he district court may decline to exercise supplemental jurisdiction over a claim ... if ... the claim substantially predominates over the claim or claims over which the district court has original jurisdiction.

The County bases its predominance argument largely on the fact that the ultimate award of compensatory damages under the state claim greatly exceeded any amount of response costs the Whites could recover. The County's argument would necessitate the district court's forecast of potential recoveries and a relative comparison of their magnitude. The determination of whether a state claim predominates is not grounded in dollars and cents; the district court, when exercising its discretion, is invoking the abstention doctrine and must address federalism concerns about avoiding federal overreaching into highly specialized state enforcement or remedial schemes. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 326–34, 63 S.Ct. 1098, 1103–07, 87 L.Ed. 1424 (1943). The County has not evinced these types of concerns to a level that demonstrates abuse of discretion. In line with our treatment of similar environmental litigation and reasoned treatment from other circuits, we reject the County's challenge to subject matter jurisdiction. *See Stoddard v. Western Carolina Regional Sewer Auth.*, 784 F.2d 1200, 1202 (4th Cir.1986) (recognizing supplemental jurisdiction over an inverse condemnation claim together with a citizen's enforcement action under the Clean Water Act); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1050 (2d Cir. 1985) (citing *Gibbs*, 383 U.S. at 728, 86 S.Ct. at 1139) (addressing supplemental jurisdiction over a state law nuisance claim together with an action for response costs under CERCLA and holding "it ... irrelevant that the scope of relief under state law differs from that under federal law").

### III

#### A

We review the district court's denial of the County's motion for judgment as a

matter of law *de novo.* We must reverse the district court's denial of the County's motion if the Whites have failed to adduce substantial evidence in support of each element of their inverse condemnation claim. *See DeMaine v. Bank One,* 904 F.2d 219, 220 (4th Cir.1990). As previously noted, for the Whites to prevail on their claim of inverse condemnation, they must have shown: (1) that the County engaged in an affirmative, positive, aggressive act; (2) that the act was a taking; (3) that the taking was for a public use; and (4) that the taking had some degree of permanence. *See Rolandi v. City of Spartanburg,* 294 S.C. 161, 363 S.E.2d 385, 387 (1987). The County asserts that the Whites failed to adduce sufficient evidence of "an affirmative, positive, aggressive act." *Id.* at 387.

■ Under South Carolina law, an affirmative, positive, and aggressive act by a municipality sufficient to establish a compensable taking must be an act, intentional or not, that overtly affects another's beneficial use and enjoyment of his land. The Whites cannot assert that a mere omission on the County's part satisfies the affirmative act test. *See McGann v. Mungo,* 287 S.C. 561, 340 S.E.2d 154, 160 (1986). The determination that an act is affirmative, positive, and aggressive depends on the facts and circumstances of the particular case; if the facts and circumstances do not establish an affirmative act, the case does not, as a matter of law, represent inverse condemnation.

Focusing on the affirmative nature of circumstances involved, the South Carolina courts have upheld the following three acts as compensable takings. First, the City of Greenville laid a seventy-two inch valved, overflow pipe through an earthen dam to control the water level of the City's reservoir. As a result of heavy rains and rapidly rising reservoir levels, the City opened the pipe valve and discharged large amounts of waters on the plaintiff's bean crops destroying them. *Lindsey v. City of Greenville,* 247 S.C. 232, 146 S.E.2d 863, 865–66 (1966).

Second, the South Carolina Department of Highways and Public Transportation negligently diverted the groundwater supply away from the plaintiff's property when it laid pipe around highway construction to drain roadbeds. The pipe drew on plaintiff's groundwater and lowered his lake levels some inches. *South Carolina Dep't of Highways & Pub. Transp. v. Balcome,* 289 S.C. 243, 345 S.E.2d 762, 763–64 (1986).

Lastly, the Town of Surfside Beach rebuilt washed-out portions of a roadway seventeen inches higher than the damaged road's original level. The rise in the road made plaintiff's property the lowest point on the roadway; therefore, any rains caused the plaintiff's property to flood. *Newsome v. Town of Surfside Beach,* 300 S.C. 14, 386 S.E.2d 274, 275 (1989).

■ In this case, the central issue is whether the Whites must show that the County actually used and disposed of the hazardous substance TCE or whether they need show only that the County was most likely a user and disposer of the TCE contaminating the Whites' well. South Carolina law requires the showing of an actual municipal action, such as laying pipe or raising a roadbed, that damages the complaining landowner. For example, before the Town of Surfside Beach rebuilt the washed sections of the road, plaintiff's land had been subject to flooding. Plaintiff was able to show that the increased rise in the road aggravated the flooding. The Town's road work was linked directly to *increased* flooding. *See Newsome,* 386 S.E.2d at 275.

In this case, if the County had dumped or carelessly disposed of TCE in a manner that caused or aggravated the Whites' well contamination, the County would be liable for an affirmative, positive, aggressive act under South Carolina law. The Whites' evidence, however, does not show conclusively that the County ever dealt with TCE. Therefore, the Whites have not demonstrated that the County's actions were a substantial contributing factor in their well contamination. Instead the Whites put forth evidence that the County engaged in activities such as applying creosote to timber, dumping county waste in a landfill, and using solvents to maintain county ve-

hicles. Each of these activities could involve TCE, but none of the Whites' evidence indicated that the County in fact did use TCE in these activities. The Whites have introduced evidence that TCE was found in the County's well, but they do not offer evidence of a TCE-related act that resulted in the contamination of the well.[4] As a matter of fact, the County offers as much inferential evidence that the TCE could be coming from the Whites' property.

The Whites have failed to introduce any evidence identifying an act that would connect the County with the Whites' TCE contamination. Although the Whites argue for generous inferences in their behalf, they have not adduced any evidence of a specific TCE-related act from which a jury could infer resulting contamination. The Whites' evidence asks the jury to infer the requisite affirmative act *and* its outcome. As a matter of law, the Whites have failed to establish the first element in their claim for inverse condemnation. Therefore, we reverse the district court's denial of the County's motion for judgment as a matter of law.

## B

The Whites have cross-appealed the dismissal of their CERCLA claim for recovery of their response costs. Section 107 of CERCLA permits the recovery of "any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). To succeed in their recovery action, the Whites must have shown a release or threatened release of a hazardous substance from the County's maintenance facility that caused the Whites to incur response costs consistent with the national contingency plan ("NCP"). *Id.* A CERCLA release involves

any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or discharging into the environment.

42 U.S.C. § 9601(22).

The district court, by rejecting the Whites' CERCLA claim, stated that "no evidence was presented that the plaintiffs' 'response costs' are consistent with the National Contingency Plan." In light of our holding that the Whites have failed to establish an affirmative act sufficient to make out their inverse condemnation claim, we also conclude that the Whites have not established a release for CERCLA purposes either.

▇ The Whites have produced no direct evidence that the County has done anything that involved TCE. Although courts have rejected the requirement that the plaintiff show actual contamination of its property by defendant's waste in order to establish liability under CERCLA, *e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1154 & n. 7 (1st Cir.1989), this rejection does not include the requirement that the plaintiff demonstrate that the defendant has deposited hazardous waste. The Whites' chain of evidence does not show that the County used TCE, that the County disposed of TCE in a manner that would liberate it to flow into the Whites' well, or that the topography of the surrounding land even would allow drainage to flow from the County's property to the Whites' well. These shortcomings in the Whites' forecast of evidence prevent the showing of a release under CERCLA and provide sufficient grounds for the district court's judgment in the County's favor on this claim. Therefore, we affirm the district court's action without discussing

---

4. In their brief, the Whites defined as the County's affirmative act its general operation of the maintenance facility. They have not shown how the facility operation precisely resulted in the taking of their land. If operation alone were sufficient under South Carolina law to show an affirmative, positive, aggressive act, then the plaintiff in *Belue v. City of Spartanburg,* 276 S.C. 381, 280 S.E.2d 49 (1981) would have recovered from the City of Spartanburg simply because the City was operating the waterworks when one of its water mains burst and flooded plaintiff's property. *Id.* at 50, *overruled on other grounds by McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741, 743 (1985). The Supreme Court of South Carolina held in *Belue* that the flooding was not caused by a specific affirmative act of the City and therefore was not a taking. *Id.*

the consistency of the Whites' recovery actions with the NCP.

### IV

We hold that the Whites failed to establish the affirmative act necessary to prevail on their inverse condemnation claim as a matter of law and that they have not shown the necessary release to prevail in a CERCLA recovery action. Accordingly, we reverse the district court's denial of the County's motion for judgment as a matter of law, affirm the district court's judgment in favor of the County on the Whites' CERCLA claim, and remand the cause for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.