29 F.3d 634
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
STATE OF CALIFORNIA, ON BEHALF OF THE CALIFORNIA DEPARTMENT
OF HEALTH SERVICES, Plaintiff-Appellee,
v.
B & R DAVIS FERTILIZERS, INC., Defendant,
and
Frontier Fertilizers Co., Inc.; Pine Tree Properties, Inc.;
John B. Anderson, an individual, Defendants-Appellants.
 No. 93-15145.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 13, 1994.
Decided July 19, 1994.
 
 1
 Before: FLETCHER and TROTT, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Frontier Fertilizer Co. ("Frontier Fertilizer"), Pine Tree Properties ("Pine Tree"), and John Anderson appeal the district court's grant of a permanent injunction ordering them to comply with the Imminent and Substantial Endangerment ("ISE") Order prepared by the State Department of Toxic Substances Control ("the Department") in an action brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), California's Hazardous Substances Account Act, and California nuisance law for the clean up of contaminated property. We affirm.
 
 
 4
 * This case involves the environmental remediation of a property in California (the "Frontier Site") which is badly contaminated with pesticides. The Department brought this action in 1991, seeking cost recovery under CERCLA and injunctive relief under the California Hazardous Substances Account Act and California nuisance law.
 
 
 5
 The three appellants in this case are former or current owners of the Frontier Site or were involved in running a pesticide business at the Frontier Site. Frontier Fertilizer, a corporation, operated an agricultural chemical supply and distribution company at the Frontier Site between 1983 and 1986. John Anderson, an individual, is a 50% shareholder in Frontier Fertilizer and its chief executive officer. Anderson also owned the Frontier Site from 1983 to 1985. In 1985 Anderson conveyed the property to Pine Tree Properties, a corporation, which he formed at that time. Anderson is the 100% shareholder of Pine Tree, its sole officer and director, and has been the sole person responsible for its overall management since its creation. Pine Tree is the current owner of the Frontier Site.[1]
 
 
 6
 In 1983, the Yolo County Health Department discovered residues of hazardous agricultural chemicals in unlined pits at the Frontier Site. Various state and local agencies began investigations to determine the extent of contamination at the Frontier Site. Soil and groundwater samples indicated that significant contamination existed in both the soil and the groundwater. Over the next several years, multiple cleanup orders were issued by the county health department, the state superior court, the Regional Water Quality Control Board, and the Department. Appellants have failed to comply substantially with these orders.
 
 
 7
 In 1985, the United States Attorney filed a criminal action against Frontier Fertilizer, Denny Kidwell, and other parties under the Resource Conservation & Recovery Act ("RCRA"), 42 U.S.C. Secs. 6901, et seq. The Information alleged that from 1983 and 1984 Frontier Fertilizer sold and distributed agricultural chemicals, including ethylene dibromide ("EDB") and disulfoton ("disyston").[2] The Information further alleged that during this period Frontier Fertilizer disposed of these waste agricultural chemicals in unlined pits at the Frontier Site and crushed used pesticide, herbicide, and insecticide containers at the Frontier Site without taking precautions to prevent chemical residues in the containers from reaching the ground. Counts Three and Four of the Information charged Frontier Fertilizer with the illegal storage and disposal of hazardous wastes, including EDB and disyston, without a permit in violation of 42 U.S.C. Sec. 6928(d)(2)(A)[3] during the years 1983 and 1984. Count Five charged Kidwell with willfully inducing and causing the storage and disposal of hazardous wastes, including EDB and disyston, by employees of Frontier Fertilizer with knowledge that Frontier Fertilizer did not have a permit, in violation of 42 U.S.C. Sec. 6928(d)(2)(A) in 1983. Frontier Fertilizer and Kidwell pled guilty to the charges against them.
 
 
 8
 After the guilty pleas were entered, Yolo County agencies continued their investigation to determine the extent of contamination at the Frontier Site. In 1988 and 1989, groundwater samples revealed significant contamination that was migrating offsite and toward the wells that supply water to the City of Davis. The Department issued an ISE Order under the California Hazardous Substances Account Act ("HSAA"), Cal.Health & Safety Code Sec. 25358.3(a)(1), ordering Frontier Fertilizer, Anderson, and the other defendants not including Pine Tree to remediate contamination at the site. The parties have not complied with substantial components of the ISE Order.
 
 
 9
 In February 1991, the Department filed suit against Frontier Fertilizer, Anderson, Pine Tree, and other defendants seeking (1) cost recovery under CERCLA; and (2) injunctive relief under the HSAA and California nuisance law requiring the defendants to remediate contamination and abate the nuisance at the Frontier Site.[4] In April 1992, the district court granted partial summary judgment for the Department, ruling that Frontier Fertilizer, Anderson, Pine Tree, and Kidwell, are liable parties under CERCLA.
 
 
 10
 On September 30, 1992, the Department filed a motion for summary judgment against Frontier Fertilizer, Anderson, Pine Tree, and Kidwell seeking permanent injunctive relief under the various state law provisions requiring the defendants to clean up the contamination at the site by complying with specified provisions of the ISE Order. The district court granted the motion and subsequently issued the injunction. Appellants timely appealed. We have jurisdiction pursuant to 28 U.S.C. Sec. 1292(a)(1).
 
 II
 
 11
 As a threshold matter we address appellants' challenge to the district court's subject matter jurisdiction over the Department's state law claims. Appellants argue that Cal.Health & Safety Code Sec. 25358.3 grants the state court in the relevant county exclusive jurisdiction to enforce provisions of the HSAA.[5] We reject this contention.
 
 
 12
 Jurisdiction over the claims for injunctive relief under state law is appropriate pursuant to 28 U.S.C. Sec. 1367(a), which provides:
 
 
 13
 (a) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
 
 
 14
 28 U.S.C. Sec. 1367(a). This provision substantially codifies under the name of "supplemental" jurisdiction the doctrine of "pendent" jurisdiction as enunciated in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). In Gibbs, the Supreme Court held that a federal court may entertain a state claim when the court has original jurisdiction over a federal claim and when the two claims "derive from a common nucleus of operative fact" and the plaintiffs "would ordinarily be expected to try [the claims] all in one judicial proceeding." Gibbs, 383 U.S. at 725; see also David D. Siegel, Practice Commentary: The 1990 Adoption of Sec. 1367, Codifying "Supplemental" Jurisdiction, 28 U.S.C.A. Sec. 1367, at 829-30, 834-36 (West 1993). The exercise of jurisdiction is also a matter of discretion, and it may be appropriate to dismiss the state claims in some cases in which the court has the power to hear the claims. 28 U.S.C. Sec. 1367(c); Gibbs, 383 U.S. at 726-27; Winn v. North American Phillips Corp., 826 F.Supp. 1424, 1425-26 (S.D.Fla.1993) (noting that under Sec. 1367, the standard for determining whether a district court should exercise discretion to dismiss state claims might differ from that under Gibbs ).
 
 
 15
 In this case the district court had original and exclusive jurisdiction over the CERCLA claim. 42 U.S.C. Sec. 9613(b). Because the state claims arise out of the same set of operative facts as the CERCLA claim and involve the same contaminated property, the court also had the power to hear the state claims. 28 U.S.C. Sec. 1367(a); see also White v. County of Newberry, 985 F.2d 168, 171-72 (4th Cir.1993); New York v. Shore Realty Corp., 759 F.2d 1032, 1050 (2d Cir.1985). Moreover, because the state claims do not predominate over the federal claims or raise novel or complex issues of state law, the district court did not abuse its discretion in retaining jurisdiction over the state claims. 28 U.S.C. Sec. 1367(c); White, 985 F.2d at 172; Shore Realty, 759 F.2d at 1050. Finally, the fact that some remedies available under the HSAA, including the apportionment of recovery costs, are not available under CERCLA does not defeat the application of supplemental jurisdiction. Gibbs, 383 U.S. at 728; White, 985 F.2d at 172; Shore Realty, 759 F.2d at 1050. We therefore conclude that the district court properly exercised subject matter jurisdiction over the Department's state claims.
 
 III
 
 16
 Appellants challenge the district court's grant of summary judgment and argue that the injunctions ordered by the district court pursuant to Cal.Health & Safety Code Sec. 25358.3, and pursuant to California nuisance law, are invalid. We review a district court's grant of summary judgment de novo. Jones v. Union Pac. R.R. Co., 968 F.2d 937, 940 (9th Cir.1992); T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 17
 The district court's grant of permanent injunctive relief is reviewed for an abuse of discretion or application of erroneous legal principles. Dexter v. Kirschner, 984 F.2d 979, 982 (9th Cir.1993); Amwest Mortgage Corp. v. Grady, 925 F.2d 1162, 1163 (9th Cir.1991).
 
 
 18
 Appellants first argue that Sec. 25358.3 does not authorize injunctive relief. At the time the district court granted the injunction, Sec. 25358.3 provided:
 
 
 19
 (a) Whenever the director determines that there may be an imminent or substantial endangerment to the public health or welfare or to the environment, because of a release or a threatened release of a hazardous substance, the director may do any or all of the following:
 
 
 20
 .............................................................
 
 
 21
 ...................
 
 
 22
 * * *
 
 
 23
 (3) Request the Attorney General to secure the relief as may be necessary to abate the danger or threat. The superior court of the county in which the threat or danger occurs shall have jurisdiction to grant the relief which the public interest and equities of the case may require to protect public health and welfare and the environment.
 
 
 24
 Cal.Health & Safety Code Sec. 25358.3(a)(3) (1992).[6]
 
 
 25
 We agree with the district court that this language is sufficiently broad to authorize the court to award injunctive relief. It authorizes the Attorney General to secure the relief necessary to abate the danger. There is no express restriction on the nature of the relief authorized, except as equity and the public interest may require. We also find persuasive the fact that virtually identical language in CERCLA has been held to authorize the federal government to seek injunctive relief. 42 U.S.C. Sec. 9706; United States v. Cannons Eng'g Corp., 720 F.Supp. 1027, 1052 (D.Mass.1989), aff'd, 899 F.2d 79 (1st Cir.1990); B.F. Goodrich Co. v. Murtha, 697 F.Supp. 89, 94, 97 (D.Conn.1988); see also United States v. Price, 688 F.2d 204, 211 (3d Cir.1982) (noting that traditionally courts of equity have had the "power to fashion any remedy deemed necessary and appropriate to do justice in the particular case"). In sum, nothing in the provision's language or history suggests that the California legislature intended to limit the court's traditional equitable powers to grant injunctive relief.[7]
 
 IV
 
 26
 Appellants next argue that the injunction granted pursuant to the HSAA is invalid because appellants are not "responsible parties" within the meaning of the law. Section 25358.3(a) authorizes the court to order any "responsible party or parties" to take appropriate action to protect public health and the environment. Cal.Health & Safety Code Sec. 25358.3(a)(1) & (a)(3) (1993).[8] "Responsible parties" are those persons described in Sec. 107(a) of CERCLA, 42 U.S.C. Sec. 9607(a). See Cal.Health & Safety Code Sec. 25323.5(a). Thus, any party that has been found liable under CERCLA is a "responsible party" under the HSAA and can be ordered to undertake the cleanup of the Frontier Site.
 
 
 27
 For a defendant to be liable under CERCLA, the plaintiff must prove four elements: (1) that the defendant is one of the four responsible parties described in 42 U.S.C. Sec. 9607(a); (2) that the site is a "facility" under 42 U.S.C. Sec. 9601(9); (3) that there was a release or threatened release of hazardous substances from the facility; and (4) that the plaintiff has incurred costs not inconsistent with the National Contingency Plan in responding to the release. 3550 Stevens Creek Assocs. v. Barclays Bank, 915 F.2d 1355, 1358 (9th Cir.1990), cert. denied, 500 U.S. 917 (1991); Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1152-53 (9th Cir.1989). Section 9607(a) provides for four types of responsible parties: (1) the current owner or operator of a facility; (2) the owner or operator of a facility at the time when hazardous substances were disposed; (3) parties who arrange for the treatment or disposal of hazardous substances; and (4) parties who arrange for transport of hazardous substances to a treatment or disposal facility. 42 U.S.C. Sec. 9607(a).
 
 
 28
 In April 1992, the district court ruled that Anderson, Frontier Fertilizer, and Pine Tree are responsible parties under Sec. 9607(a). Specifically, the court found that Anderson was an owner of the facility at the time of disposal, that Pine Tree is the current owner of the facility, and that Frontier Fertilizer was the operator of the facility at the time of disposal. See 42 U.S.C. Sec. 9607(a)(1) & (a)(2). The court also ruled that the other three elements of CERCLA liability were established with respect to the defendants such that they were liable parties under CERCLA.
 
 
 29
 In November 1992, the district court subsequently ruled that because Frontier Fertilizer, Anderson, and Pine Tree are liable parties under CERCLA, they are also responsible parties under the HSAA. Frontier Fertilizer and Anderson both challenge the court's finding that they are responsible parties, arguing that there is no evidence that they were in any way involved in activities that led to a release of hazardous substances.
 
 
 30
 In holding that appellants are liable under CERCLA, the district court relied on the guilty plea entered by Frontier Fertilizer in the underlying criminal action. In this plea, Frontier Fertilizer pled guilty to knowingly storing and disposing of hazardous wastes in 1983 and 1984 without a permit, in violation of 42 U.S.C. Sec. 6928(d)(2)(A). Frontier Fertilizer and Anderson argue that this plea constitutes an admission only that they treated, stored, or disposed of hazardous substances without a permit, and that there is no evidence that these activities resulted in a release at the Frontier Site during the years in question.
 
 
 31
 This argument is without merit. Our circuit has held that a guilty plea constitutes " 'an admission of all the elements of a formal criminal charge' " and " 'conclusively admits all factual allegations of the indictment.' " United States v. Mathews, 833 F.2d 161, 163 (9th Cir.1987) (citing McCarthy v. United States, 394 U.S. 459, 466 (1969) and United States v. Benson, 579 F.2d 508, 509 (9th Cir.1978)); see also United States v. Parker, 874 F.2d 174, 177-78 (3d Cir.1989). In this case, the Information specifically alleged that in the years 1983 and 1984 Frontier Fertilizer dumped chemicals into unlined pits and crushed contaminated containers without taking precautions to prevent chemical residues from reaching the ground at the Frontier Site. By entering into the guilty pleas, Frontier Fertilizer thus admitted that there was a release of hazardous substances at the Frontier Site during the years in question.
 
 
 32
 Frontier Fertilizer argues that subsequent declarations filed by Denny Kidwell raise a genuine issue of material fact as to whether hazardous materials were released at the Frontier Site in 1983 and 1984. We disagree. As noted above, in 1986 Kidwell, the manager of the Frontier Site from 1983 to 1986 pled guilty to a charge that he "did willfully command, induce, procure, and cause the storage and disposal of hazardous wastes, including but not limited to, ethylene dibromide (EDB) and [disyston], by employees of Frontier Fertilizer" with knowledge that Frontier Fertilizer did not have a permit in violation of federal law. Six years later, in December 1991, Kidwell executed a declaration stating that Frontier Fertilizer never handled either EDB or disyston at the Frontier Site. On April 10, 1992, Kidwell submitted a second declaration retracting that portion of the previous declaration stating that disyston was not used at the Frontier Site.
 
 
 33
 These declarations did not create a genuine issue of material fact as to whether a release occurred at the Frontier Site during the years in question. Although Kidwell retracted his statement that disyston was never handled at the Frontier Site, his declarations did not allege that disyston was properly handled at the Frontier Site. Kidwell's retraction thus affirmed both his original plea and Frontier Fertilizer's plea, which admitted that Frontier Fertilizer's employees illegally disposed of disyston at the Frontier Site.[9] We therefore hold that the district court did not err in finding that these declarations failed to create a genuine issue of material fact.
 
 
 34
 Anderson also argues that there is a genuine issue of material fact as to whether hazardous materials were released at the Frontier Site in 1983 and 1984, the years that Anderson owned the Site. The district court found that Anderson was liable under CERCLA as the owner of the Frontier Site at the time Frontier Fertilizer disposed of the hazardous substances. See 42 U.S.C. Sec. 9607(a)(2). In doing so, the court noted that the guilty plea entered by Frontier Fertilizer provided evidence that EDB and disyston were disposed of at the Frontier Site in 1983 and 1984.
 
 
 35
 At a hearing on the motion for summary judgment, Anderson attempted to create a genuine issue of material fact by presenting the Kidwell declarations. The district court ruled that these declarations were insufficient to entitle Anderson to a continuance pursuant to Rule 56(f). We must affirm this ruling unless there has been a clear abuse of discretion. Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 451-52 (9th Cir.1991).
 
 
 36
 Anderson's argument that he was entitled to present evidence demonstrating that EDB and disyston were not released at the Frontier Site in 1983 and 1984 is a red herring. The district court did not rule that Anderson did not have a right to present evidence that Kidwell entered the guilty plea for reasons other than guilt. Instead, it relied on the guilty plea entered by Frontier Fertilizer. Anderson was a 50% shareholder of Frontier Fertilizer and its chief executive officer. As a member of Frontier Fertilizer's Board of Directors, Anderson authorized the plea agreement. Anderson's suggestion that he was in no way involved in Frontier Fertilizer's plea agreement is thus disingenuous.
 
 
 37
 Moreover, the precise issue before the court was whether a continuance was justified on the grounds that Anderson had identified relevant information that he sought to discover that would establish a genuine issue of material fact. See Church of Scientology v. I.R.S., 991 F.2d 560, 562 (9th Cir.1993) (denial of a continuance is disfavored where the party seeking the continuance specifically identifies relevant information and where there is a basis for believing that the information sought actually exists). Anderson's only reason for seeking a continuance was to depose Kidwell to clarify how disyston was handled by Frontier Fertilizer during the years in question. Because Frontier Fertilizer pled guilty to disposing of EDB disyston at the Frontier Site during the years in question, the additional information sought by Anderson would not have created a genuine issue of material fact. The district court did not abuse its discretion in denying the motion for the continuance.
 
 V
 
 38
 Appellants argue that in order to obtain injunctive relief under the HSAA and under California nuisance law, the Department must first show that irreparable harm will result in the absence of an injunction and that legal remedies are inadequate. See Cal.Health & Safety Code Sec. 25358.3, Cal.Health & Safety Code Sec. 205, and Cal.Civil Code Secs. 3480, 3491, 3494. They contend that the injunction is invalid because the Department failed to make this showing. The Department argues that there was no need to demonstrate irreparable harm and inadequate remedies at law to obtain an injunction under these provisions. Because we conclude that the Department has made a showing of irreparable harm and inadequate remedies at law, we do not decide whether these provisions authorize injunctive relief in the absence of such a showing.[10]
 
 
 39
 The Department presented unrefuted evidence that the soil at the Frontier Site and the groundwater under the Frontier Site are contaminated with exceedingly high concentrations of carcinogenic and mutagenic chemicals. These chemicals in the groundwater are migrating toward the water supply of the City of Davis. If these chemicals reach the City of Davis water supply, they will contaminate the well relied upon by the municipality, leading to the exposure of city residents to carcinogens and mutagens. This potential exposure to carcinogenic water constitutes an "irreparable injury" sufficient to justify injunctive relief.
 
 
 40
 Legal remedies are inadequate to alleviate this concern. Although it is true that the Department can clean the site itself and recover costs for the clean up under CERCLA, a cleanup undertaken by the Department is not an adequate substitute for injunctive relief. The Department is responsible for the remediation of many contaminated sites in California and does not have sufficient resources to clean them all now and sue, perhaps years later, to recover the costs. In a similar context, federal courts have ruled that the availability of legal remedies under CERCLA does not preclude the issuance of injunctive relief. United States v. Waste Indus., Inc., 734 F.2d 159, 168 (4th Cir.1984); B.F. Goodrich, 697 F.Supp. at 97-98; Lincoln Properties, Ltd. v. Higgins, 36 Env't Rep.Cas. (BNA) 1228, 1242-43 (E.D.Cal.1993). Finally, if we were to hold that cost recovery actions under CERCLA are an adequate legal remedy, we would in effect repeal provisions in California law authorizing injunctive relief in cases of nuisance or violation of the HSAA. See Waste Indus., 734 F.2d at 168 (injunction under RCRA is appropriate even though legal remedies are available under CERCLA; otherwise CERCLA would, in effect, be repealing provisions of RCRA). This we refuse to do.
 
 
 41
 In summary, we conclude that the Department has successfully demonstrated both irreparable injury and inadequate remedies at law. For this reason, do not decide whether such a showing is in fact necessary to obtain injunctive relief under the HSAA and California nuisance law.
 
 VI
 
 42
 Frontier Fertilizer and Anderson argue that in order to obtain injunctive relief in California based on a nuisance emanating from real property, the party that is enjoined must have a possessory interest in the property. They argue that because they do not currently own the Frontier Site they cannot be enjoined to abate the nuisance.
 
 
 43
 Although California courts have not yet decided whether a defendant without a possessory interest in real property can be ordered to abate a nuisance on that property, see Selma Pressure Treating Co. v. Osmose Wood Preserving Co., 271 Cal.Rptr. 596, 607 n. 7 (Cal.Ct.App.1990), we conclude that in this specific case the court can enjoin appellants to abate the nuisance. We are unaware of any case law in California providing that only those with a possessory interest in real property can be ordered to abate a nuisance.[11] Furthermore, although Anderson and Frontier Fertilizer are not the current owners of the Frontier Site, Anderson is a 100% shareholder in Pine Tree, the current owner of the Frontier Site. Thus, Anderson is clearly able to obtain access to the Frontier Site and to grant such access to Frontier Fertilizer, a corporation in which he is a 50% shareholder. In light of these facts, we conclude that injunctive relief may properly be ordered against both Anderson and Frontier Fertilizer.
 
 
 44
 In conclusion, we affirm the district court's grant of a permanent injunction ordering appellants to comply with the Imminent and Substantial Endangerment Order with respect to all appellants. We hold that the injunction is appropriate under both the HSAA and the California nuisance abatement statute.
 
 
 45
 AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Several defendants in this action are not before us on appeal: (1) B & R Company of Davis, a partnership which operated an agricultural chemical supply company at the Frontier Site from 1972 to 1983 (John Anderson was a 45% owner of B & R Company of Davis); and (2) Denny Kidwell, the manager of the Frontier Site from at least 1983 to 1986 (Kidwell is a 25% shareholder in Frontier Fertilizer)
 
 
 [2]
 EDB is an animal mutagen and a carcinogen. Both EDB and disyston qualify as hazardous substances under CERCLA. 42 U.S.C. Secs. 9601(14) & 9602(a)
 
 
 [3]
 Section 6928(d)(2)(A) provides, in relevant part:
 Any person who--
 * * *
 (2) knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter--
 (A) without a permit under this subchapter ... shall, upon conviction, be subject to a fine of not more than $50,000 for each day of violation, or imprisonment not to exceed two years (five years in the case of a violation of paragraph (1) or (2)), or both....
 42 U.S.C. Sec. 6928(d)(2)(A).
 
 
 [4]
 The first claim sought recovery of response costs pursuant to CERCLA. The second claim sought injunctive relief pursuant to Cal.Health & Safety Code Sec. 25358.3(a)(3). The third claim sought an injunction ordering the defendants to comply with the ISE Order, which had been issued pursuant to Sec. 25358.3(a)(1). The fourth claim sought injunctive relief to abate a nuisance pursuant to Cal.Civil Code Sec. 3480 and Cal.Health & Safety Code Sec. 205. All of the claims were brought against all of the defendants except the third claim, which was not brought against Pine Tree
 
 
 [5]
 Section 25358.3 provides that "The superior court of the county in which the threat or danger occurs shall have jurisdiction to grant the relief...." Cal.Health & Safety Code Sec. 25358.3(a)(3)
 
 
 [6]
 In January 1993, the California legislature amended Sec. 25358.3(a)(3) to explicitly authorize the court to grant an injunction upon a showing that there has been a release or threatened release and that there may be an imminent or substantial threat to the environment. Act of January 1, 1993, c. 1344, Sec. 14
 
 
 [7]
 Appellants note that in September 1989 the legislature deleted language from Sec. 25358.3(a)(3), which stated
 ... Upon a showing by the department that a release or threatened release has occurred or is occurring, and that there may be an imminent or substantial endangerment to the public health or welfare or to the environment, the court may grant a permanent or temporary injunction, restraining order, or other order.
 Historical & Statutory Notes, West's Ann.Cal.Code, Health & Safety Code Sec. 23538.3 (1992). Appellants fail to recognize, however, that this language, in addition to two other subsections of Sec. 23538.3, had been adopted only one month earlier, in August 1989. Id. All three provisions were deleted in September 1989, returning the provision to the language that had existed since 1983. Stats.1989, c. 1032, Sec. 21. Nothing in the legislative history accompanying the deletion of this language suggests an intent to limit the court's traditional equitable powers to grant injunctive relief.
 
 
 [8]
 In 1992 when the injunction was issued, subsection (a)(1), which authorizes the Department to issue ISE Orders, stated that the Department could issue these to any "responsible party." However, subsection (a)(3), which authorizes the Attorney General to secure necessary relief, did not make any specific references to "responsible parties." In 1993, subsection (a)(3) was amended to state that the Attorney General could seek relief from responsible parties
 
 
 [9]
 Moreover, Kidwell's declarations were filed six years after his entry of the guilty plea. These declarations contradict both his guilty plea and Frontier Fertilizer's guilty plea. The district court was entitled to find that these declarations were unreliable and to reject Frontier Fertilizer's attempts to defeat summary judgment by submitting contradictory testimony when the contradictory testimony is obviously a sham. See e.g., Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543-44 (9th Cir.1975); see also Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir.1991); Foster v. Arcata Assocs. Inc., 772 F.2d 1453, 1462-63 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986)
 
 
 [10]
 We note, however, that at the time that this injunction was issued, Sec. 25358.3(a) authorized the department to request the Attorney General to secure relief "[w]henever [he] determines that there may be an imminent or substantial endangerment to the public health or welfare or to the environment, because of a release or threatened release." Moreover, he may order "the relief which the public interest and equities of the case may require ... Cal.Health & Safety Code Sec. 25358.3(a)(1) & (3). Similar language in federal environmental statutes has been interpreted to authorize injunctive relief based on the mere risk or possibility of harm rather than the traditional requirement of irreparable harm. E.g., Price, 688 F.2d at 211; B.F. Goodrich, 697 F.Supp. at 95-96. We also note that in January 1, 1993, Sec. 25358.3 was amended to expressly authorize injunctive relief in the absence of a showing of irreparable harm and inadequate remedies at law
 
 
 [11]
 Appellants cite to California Forms of Pleading and Practice to support their argument. See 11 Matthew Bender, California Forms of Pleading and Practice, Nuisance, No. 1, at 53, 59. Not only does such a model form lack any sort of precedential value, the comments to this same form undercut appellants' argument by noting that complaints for injunctive relief do not always involve the defendant's property. For example, an injunction may be sought in cases where there is an obstruction of public property