**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 05-1680**

———————————

JAMES ISAAC; WILLIAM STEWART; ALVIN WILLIAMS;
GERALD AGNEW; WAYMOND CHAVIS; JAMES MITCHELL;
LYDELL LANDRUM,

                                             Plaintiffs - Appellants,

      versus

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION,

                                            Defendant - Appellee.

———————————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  W. Earl Britt, Senior District Judge.  (CA-03-137-5-BR)

———————————

Submitted:  June 16, 2006          Decided:  July 11, 2006

———————————

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Alan McSurely, Chapel Hill, North Carolina, for Appellants.  Roy Cooper, North Carolina Attorney General, Tiare B. Smiley, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Seven African-American employees of the North Carolina Department of Transportation ("NCDOT") sued their employer alleging causes of action under Title VII, 42 U.S.C.A. § 1981 (West 2003), and the North Carolina Constitution after a co-worker displayed a noose in their workplace during Black History Month. NCDOT removed the case to federal court and moved for summary judgment. The district court dismissed the § 1981 cause of action and granted summary judgment to NCDOT on the state constitutional claims and the Title VII retaliation claims. The court denied summary judgment on the hostile work environment claims, however. After trial on those claims, a jury found that the co-worker's behavior constituted a hostile work environment, but that NCDOT was not liable for the co-worker's acts. The employees appeal, contending that the district court should have remanded their state constitutional claims to state court, and that the court gave erroneous jury instructions regarding the employer's liability for the hostile work environment. We affirm.

I.

The employees work at NCDOT's Beryl Road Equipment Unit. They maintain that on or about February 1, 2002, the first day of Black History Month, a fellow employee, Raymond Powell, fashioned a hangman's noose out of a piece of rope and hung it from a wire

2

antenna over his workstation. They further contend that the rope remained in place until March 14, and that during that time, shop supervisors repeatedly commented on the noose and laughed. They also maintain that at a staff meeting in March, Powell stated, "we [white people] need to go back to the way things used to be. Fight 'em and hang 'em like my father did."

The employees reported these allegations to the Civil Rights Division of the state Office of Administrative Hearings, which is the agency designated by the state legislature to receive EEOC complaints. NCDOT received notice of those EEOC charges on March 14, 2002, at which point it began its own investigation of the events. On May 7, 2002, NCDOT issued a statement, concluding that it found no noose in the workshop, and that the only rope at Powell's workstation was a "special tool designed by Raymond Powell . . . . to pull electrical wire and hydraulic hoses through tight inaccessible pathways such as pipes, tubes, and other metal/steel pathways." In July 2002, the Office of Administrative Hearings determined there was "credible evidence" that Powell had displayed a hangman's noose. After failed conciliation efforts between the employees and NCDOT, EEOC issued right-to-sue letters to the employees, who then filed the instant action.

II.

On appeal, the employees first contend that the district court erred by granting summary judgment against them on their state constitutional claims instead of remanding those claims to state court. They seem to suggest that the district court lacked jurisdiction over the state claims. See Brief of Appellants at 22.

Because the district court had supplemental jurisdiction over the state claims, it did not err in exercising that jurisdiction. Federal courts may exercise supplemental jurisdiction over state law claims if they "form part of the same case or controversy" as claims that are properly within the jurisdiction of the federal court. 28 U.S.C.A. § 1367 (West 1993). "The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); see also Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc., 145 F.3d 660, 662 (4th Cir. 1998) (noting that § 1367 codified the Supreme Court's holding in Gibbs).

There can be no doubt that the employees' state constitutional claims arise out of the "same core of operative facts" as their Title VII claims. Indeed, in pleading their state claims in the

4

complaint, the employees specifically incorporated by reference all of the factual allegations supporting their federal claims. All of the allegations in the complaint concern the alleged harassment of the employees by co-workers and the NCDOT's assertedly inadequate investigation of those complaints. Therefore, § 1367 permits the exercise of federal jurisdiction over the state claims.

Of course, even if the requirements for supplemental jurisdiction are met, a district court has the discretion not to exercise such jurisdiction. A federal court may decline to exercise jurisdiction over state law claims if, <u>inter alia</u>, "the claim raises a novel or complex issue of state law." 28 U.S.C.A. § 1367(c). The employees apparently believe that this exception applies here; they contend that their claims present novel questions of state law because "the 1971 anti-discrimination clause in question has not been interpreted by [the] North Carolina appellate division." Brief of Appellant at 12.

That assertion is simply false. Article I, § 19 of the North Carolina Constitution -- on which the employees base their state constitutional claims -- is not a new or obscure provision. On the contrary, it is the state's fundamental guarantee of equal protection. North Carolina courts have repeatedly interpreted this provision, holding that it parallels the Fourteenth Amendment. "The principle of equal protection of the law is explicit in both the Fourteenth Amendment to the United States Constitution and

5

Article I, Section 19 of the Constitution of North Carolina . . . . Our courts use the same test as federal courts in evaluating the constitutionality of challenged classifications under an equal protection analysis." Richardson v. N.C. Dep't of Corr., 478 S.E.2d 501, 505 (N.C. 1996); see also Disher v. Weaver, 308 F. Supp. 2d 614, 624 (M.D.N.C. 2004) ("North Carolina courts have consistently interpreted [Art. I, § 19] to be synonymous with the provisions of the Fourteenth Amendment of the United States Constitution, finding that equivalent rights and protections are provided by each source.") (citing Bacon v. Lee, 549 S.E.2d 840, 856 n.11 (N.C. 2001)).

Even if the state constitutional claims did present novel or complex questions of state law, the district court was not required to remand them. Section 1367(c) is permissive -- it merely allows a district court to dispose of a state claim over which it could exercise supplemental jurisdiction. For that reason, we review a district court's decision to retain jurisdiction for abuse of discretion. See, e.g., White v. County of Newberry, S.C., 985 F.2d 168, 172 (4th Cir. 1993) (reviewing decision to retain jurisdiction under § 1367 for abuse of discretion). In the present case, the district court's decision to retain discretion over state claims based on the same core of operative facts as the employees' § 1981 and Title VII claims constitutes no abuse of discretion.

The employees next argue that the district court erred in defining the term "supervisor" in its instructions to the jury. They preserved this contention by objecting to that definition at trial; accordingly, we review the alleged error for abuse of discretion. See United States v. Ebersole, 411 F.3d 517, 526 (4th Cir. 2005).

The district court instructed the jury that if it determined that a co-worker created a hostile work environment for the employees, it could not impose liability on NCDOT unless it found two additional facts by a preponderance of the evidence:

> First, that plaintiff's supervisor or successively higher authority knew, that is had actual knowledge, or should have known, that is had constructive knowledge, of the racially hostile or abusive environment; and,
> Second, that the supervisor or higher authority permitted it to continue by failing to take remedial action.

The employees acknowledge that this instruction was a correct statement of the law. See Brief of Appellant at 30.

Nevertheless, they argue that the court erred when it defined the term "supervisor" as follows:

> A supervisor is a person with immediate or successively higher authority over the employee. The essence of supervisory status is the authority to affect terms and conditions of employment, primarily consisting of the power to hire, fire, demote, promote, transfer, or discipline the employee. This includes someone with the power to provide significant input into employment decisions, to instruct the offending employee to cease harassing behavior, or to implement other means of taking remedial action.

J.A. 904. According to the employees, this instruction impermissibly "directed the jury away from agency and negligence law applicable to a co-employee harasser case," and instead invited them to consider the "relative power of [employer's] 'agents.'" Brief of Appellee at 30, 35. Although their argument is not entirely clear, apparently the employees contend on appeal that the district court should not have defined "supervisor," but simply should have focused on NCDOT as an organization -- "what did the employer or agency know? What should <u>it</u> have known? When did <u>it</u> know about the harassment? When should <u>it</u> have known about the harassment?" Brief of Appellant at 33 (emphasis in original).

The problem with this argument is that we cannot know what NCDOT knew (or should have known) without knowing what its agents and supervisors knew (or should have known). An organization can only act through human beings. <u>See</u> <u>United States v. W.F. Brinkley & Son Const. Co., Inc.</u>, 783 F.3d 1157, 1159 n.5 (1986) ("Of course, a corporation acts through its officers or agents."); <u>see also</u> <u>United States v. One Parcel of Land Located at 7326 Highway 45 North</u>, 965 F.3d 311, 316 (7th Cir. 1992) ("As a legal fiction, a corporation cannot 'know' like an individual. . . . A corporation acts through its agents. Similarly, a corporation 'knows' through its agents.") (citing W. Fletcher, 3 Corporations § 787 (1986)).

The employees themselves acknowledged just this in the district court, asking the court to instruct the jury:

> Defendant, as the Plaintiffs' employer, will be responsible or liable for permitting such behavior only if the Plaintiff proves by a preponderance of the evidence that the Plaintiff's supervisor or successively higher authority knew, that is, had <u>actual knowledge</u>[,] or should have known, that is, had <u>constructive knowledge</u>, of the hostile or abusive work environment and permitted it to continue by failing to take remedial action.

Like the court's instruction, the employees' proposed instruction imposed liability only when a "supervisor or successively higher authority" had knowledge of the harassment. Thus, the district court did not abuse its discretion by focusing the jury's attention on the knowledge of NCDOT's supervisory employees rather than on what NDCOT, as a nameless, faceless entity, "knew."

IV.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process. For all of the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.

9