Barry CLIFFORD, Plaintiff, Appellee,

v.

M/V ISLANDER, et al.,
Defendants, Appellees.

Woods Hole, Martha's Vineyard and Nantucket Steamship Authority,
Defendant, Appellant.

Barry CLIFFORD, Plaintiff, Appellant,

v.

M/V ISLANDER, et al.,
Defendants, Appellees.

Nos. 87–1951, 87–2148.

United States Court of Appeals,
First Circuit.

Heard April 4, 1988.
Decided May 13, 1988.

Frank H. Handy, Jr., with whom Knee-land, Kydd & Handy, Boston, Mass., was on brief, for M/V Islander and Woods Hole, Martha's Vineyard and Nantucket S.S. Authority.

Robert S. Wolfe, Manchester, Mass., with whom Alan H. Tufankjian, Scituate, Mass., was on brief, for Barry Clifford.

Before COFFIN, BREYER and SELYA, Circuit Judges.

PER CURIAM.

In Count I of his complaint, plaintiff presented a claim of salvage for his work in performing emergency repairs on the M/V Islander. In Count II, he presented a claim in quantum meruit for such services. The district court initially rejected plaintiff's claim for salvage on the ground that the essential element of "marine peril" had not been proven. It did, however, determine that an oral maritime contract had been entered into and that an award of $150,000 would constitute appropriate compensation.

In our earlier opinion in this case, *Clifford v. M/V Islander*, 751 F.2d 1 (1st Cir. 1984), we affirmed the district court's finding of no peril, thus precluding an award on the basis of salvage, but noted that the issue was closer than the district court's opinion suggested. We merely concluded that the district court's finding was not clearly erroneous. We upheld the finding of an oral maritime contract but found ourselves unable to affirm the award of $150,000. We gave the district court two options. We first said:

> It may be that the district court implicitly determined that the contract was not simply for diving but also for conducting a survey, formulating a plan of repair, and immediately overseeing the implementation of that plan, and that such a contract would require a greater daily rate than that for diving. It may also be that the district court saw in the circumstances under which Clifford was hired, an expectation on the part of the SSA [steamship authority] that it would have to pay much more if it ultimately asked him to remain on the scene for a long, tiring, trying period of time, which he appears to have done. So too, it may be that the district court factored in the risks which Clifford faced and which must have been obvious at the outset to Broderick and the other SSA officials.

> All of these factors and a number of others may have been taken into account by the district court, but we are in no position to know that at this time. This being so, we have no choice but to remand for further findings concerning what damages should be awarded under the contract.

751 F.2d at 8. We also allowed the district court to reopen the record if it wished to do so, saying:

> In this case the court should feel free to reopen the record to receive evidence of the worth of the exceptional services that were rendered under such trying circumstances. Should this be allowed, SSA of course should be accorded similar opportunity to submit contrary evidence. At the conclusion of such reconsideration, we shall expect specific findings supporting the final award.

*Id.* (footnote omitted).

On remand, after three status conferences held over the last three years, the district court on October 2, 1987 issued a memorandum and order rehearsing the factual situation which we have reported in *Clifford v. M/V Islander*. The court concluded that plaintiff's normal $600 daily diving rate, which he had used for surveying dolphins at the ferry slip after the events of this litigation had occurred, was not an appropriate measure for the "level, amount, and degree of responsibility, skill, time, effort, expense, and risk involved." Appendix at 62. The court concluded with

the following rationale supporting its re-affirmed award of $150,000:

> Based upon Clifford's services, during the period from 11:15 a.m., March 19, 1980 to 7:00 a.m. March 20, 1980, including but not limited to his unique experience as a diver and salvor, his promptness in responding to the repair work, his tireless energy and perseverance in completing the task under time pressure to finish before the arrival of storm winds, his skillful formulation and implementation of the four-phase plan, and his willingness and ability to face and undergo serious risks to his life, health and safety despite his own physical fatigue, adverse water conditions, and limited resources, I calculate the reasonable value of his services to be $150,000.

*Id.* at 63.

■ This seems to us to be a reasonable response to the first alternative we left open to the district court, in which we invited it to let us know what factors it had taken into account in making its award. It might well be that this would not be sufficient in the face of detailed proffers of proof of charges made by other expert divers in similar circumstances or in the face of proffers of detailed expert testimony as to what would be reasonable for highly expert divers to charge in similarly demanding situations. The record, however, is bereft of such proffers. Indeed, the only further evidence that the record indicates would be offered by the parties is the following: (1) at a status conference on April 14, 1986, the plaintiff indicated that he would offer expert testimony that his services under the special maritime contract had a value of $250,000; (2) at a status conference on March 13, 1985, and then again on August 17, 1987, the defendant maintained the position that its evidence would show the value of salvage services to be less than $1,000. In a memorandum submitted to the court on August 4, 1986, the defense contented itself with stating that bills submitted to the defendant by other divers for work on the M/V Islander during the period in question ranged from $79.85 to $500.

The defendant's stance thus offered no illumination to the district court that it did not already have. The defendant insisted to the end on maintaining a posture that the services were of minimal value. It did not respond to the court's obvious concern that, although the services did not merit the substantial percentage that a claim in salvage might warrant, they were indeed of such an unusual nature that the routine daily charges of divers engaged in routine and nondangerous work would not be an appropriate measure. Indeed, close to the end of the proceedings below, the defendant filed a motion for admission of further evidence, but did not indicate in any way what that evidence would be.

On this record, the court was fully justified in arriving at the figure of $150,000. This was a substantial discount from plaintiff's claim, and proffer, of $250,000. It was only one third of the bill for permanent repairs in Boston ($450,000), repairs that might not have been possible had plaintiff's emergency "first aid" actions not been successful.

■ Plaintiff appeals from the denial of prejudgment interest. Although prejudgment interest will normally be awarded in admiralty, absent exceptional circumstances, the court has considerable discretion. In this particular case, the court apparently felt that a claim in Count I for something close to half the value of the M/V Islander was unconscionably excessive. *See* G. Gilmore & C. Black, *The Law of Admiralty* 563 (2d ed. 1975) (moiety rule is obsolete; no recent cases award more than about 20% of the value of the salved property). Although we have said that the issue of marine peril was closer than the district court apparently thought, we cannot say that the district court abused its discretion in denying prejudgment interest. The issue before it was complex; the stands persistently taken by the parties were extreme; and the court arrived at a conclusion that it thought, as we do, was fair to both sides. That the court did not see fit to add prejudgment interest under these particular circumstances was not an abuse of discretion. *Cf. Alkmeon Naviera, S.A. v.*

**114**

M/V "Marina L," 633 F.2d 789, 798 (9th Cir.1980); *Earnhardt v. Commonwealth of Puerto Rico*, 744 F.2d 1, 3 (1st Cir.1984). As the court noted in *Western Pacific Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1288 (9th Cir.1984), "pre-judgment interest is an element of compensation, not a penalty." It is obvious here that the court felt that the maximum compensation fairly recoverable was the sum awarded without what would have been a very considerable additional amount of prejudgment interest.

*Affirmed. Costs to be paid by the defendants.*