present a case or controversy sufficient to confer standing.[10] Plaintiffs have failed to demonstrate that they continue or it is highly likely that they will continue to structure their banking transactions, or that the government would bring a criminal action against them for structuring in the immediate future. Therefore, Plaintiffs cannot maintain an action for declaratory and injunctive relief.

Thus, we conclude that the district court properly denied Plaintiffs' motion for leave to file a second amended complaint inasmuch as Plaintiffs' proposed amendments would be futile.

## CONCLUSION

For the foregoing reasons, we conclude that the district court properly exercised supplemental jurisdiction over Plaintiffs' state law claims against Oxford Bank, properly dismissed Plaintiffs' first amended complaint, and correctly determined that allowing Plaintiffs to file a second amended complaint would have been futile. Thus, we **AFFIRM** the district court's order.

---

[10]Moreover, as the district court noted, on September 23, 1994, Congress effectively reversed *Ratzlaf* by adopting Public Law 103-325, Section 411(a), which amended the anti-structuring law by adding a subsection (c) to 31 U.S.C. § 5324, eliminating the word "willfully" from the criminal penalty provision and doubling the penalties for aggravated violations involving more than $100,000 in a year. *Blakely*, 93 F.Supp.2d at 801 n.2.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0014P (6th Cir.)
File Name:  02a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOHN KEITH BLAKELY and
JOHN EMMETT LONG,
    *Plaintiffs-Appellants,*

    *v.*    No. 00-1404

UNITED STATES OF AMERICA,
et al.,
    *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-74532—John Corbett O'Meara, District Judge.

Argued:  September 12, 2001

Decided and Filed:  January 11, 2002

Before:  SILER, CLAY, and GIBSON,[*] Circuit Judges.

---

[*] The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

---

**COUNSEL**

---

**ARGUED:** Jeffrey M. Blum, Louisville, Kentucky, for Appellants. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees. **ON BRIEF:** Jeffrey M. Blum, Louisville, Kentucky, for Appellants. Alan N. Harris, BODMAN, LONGLEY & DAHLING, Ann Arbor, Michigan, Kathleen A. Lieder, BODMAN, LONGLEY & DAHLING, Cheboygan, Michigan, William L. Woodard, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees.

---

**OPINION**

---

CLAY, Circuit Judge. Plaintiffs, John Keith Blakely and John Emmett Long, filed the instant action against Defendants, United States of America, Attorney General Janet Reno, in her official and individual capacities, United States Attorney Saul Green, in his official and individual capacities, and the Commissioner of the Internal Revenue Service (collectively hereinafter referred to as the "federal Defendants") as well as several banks including Oxford Bank.[1] In their first amended complaint, Plaintiffs alleged causes of action for (1) fraud under Michigan state law against all defendants; (2) violation of the due process clause against all federal Defendants in their official capacities; (3) violation of the excessive fines clause of the Eighth Amendment against all federal Defendants in their official capacities; (4) violations of Plaintiffs' constitutional rights under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Reno and Saul in their individual capacities; (5) a declaratory judgment

---

[1]Plaintiffs initially brought claims against several banks. All other banks except Oxford have been voluntarily dismissed from this suit.

second amended complaint (count VIII) is similarly barred by sovereign immunity.

Second, Plaintiffs' claim for declaratory relief setting aside the consent judgment for the civil forfeiture of their property (count III) is barred by the doctrine of claim preclusion. Plaintiffs had a full and fair opportunity to present challenges to the legality of the civil forfeiture of their property in the action in which the consent judgment was entered.

Count IV against Reno and Green for failure to return Plaintiffs' forfeited assets is barred, as discussed earlier, by prosecutorial or qualified immunity. Further, Plaintiffs' claim for negligent misrepresentation (count VIII) against Defendant Oxford Bank is barred by 12 U.S.C. § 3403(c), which precludes actions against financial institutions for reporting potentially illegal activity under that section.

Finally, Plaintiffs' claim for declaratory and injunctive relief striking down 31 U.S.C. § 5324(a)(3) (count IX) will not survive a motion to dismiss. Section 5324(a)(3) provides that

> No person shall for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section--
> * * *
> (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

31 U.S.C. § 5324(a)(3). Plaintiffs' second amended complaint alleges that this statute should be declared unconstitutional and enjoined because Congress has amended the statute in light of *Ratzlaf*, such that willfulness is no longer required for a criminal conviction for structuring. As with Plaintiffs' claims for injunctive and declaratory relief striking down § 981 (counts V and VI), Plaintiffs fail to

of its officers and agents in their official capacities, was waived under the APA, 5 U.S.C. § 702.[9]

First, as discussed earlier, the APA does not operate to waive the government's sovereign immunity from suit as to Plaintiffs' claims for money damages in counts I, II, and III of the first amended complaint (counts I, II, and VII of the second amended complaint). Plaintiffs' action for negligent misrepresentation against the federal Defendants in the

---

[9]Plaintiffs also allege that their claims are being brought not only under the FTCA and the APA but also under various federal statutes pertaining to wrongfully collected taxes by the IRS, particularly 26 U.S.C. § 7422. These statutes, the argument goes, waive the federal defendants' sovereign immunity. The district court rejected this argument, stating that Plaintiffs seek to end run around the federal Defendants' sovereign immunity by claiming that the "action is brought under federal statutes pertaining to wrongfully collected taxes." *Blakely*, 93 F.Supp. 2d at 806 n.8. We agree. Plaintiffs' brief makes clear that the issues raised in this case involve their challenge to the consent decree, which perfected the forfeiture of their property. Plaintiffs argue that misrepresentations on the part of the government induced them to enter into the consent judgment by promising Plaintiffs that their forfeited assets would be used to pay off their tax liability. *See* Plaintiffs' Br. at 12. Thus, Plaintiffs admit that their suit revolves around their challenge to the consent judgment. Moreover, Plaintiffs admit that in order to file a tax refund suit, they must first have exhausted their administrative remedies by filing an administrative claim with the Secretary of the Treasury. *See McDonnell v. United States*, 180 F.3d 721, 722 (6th Cir. 1999) (explaining that 26 U.S.C. § 7422(a) requires taxpayer to first file an administrative claim before filing judicial action). Plaintiffs claim they did so by hand delivering the August 17, 1994 letter to I.R.S. agents. However, that argument was not made before the district court when it ruled on Plaintiffs' motion, thus, they are barred from raising the argument here. *Anchor Motor Freight,* 899 F.2d at 559. Moreover, the 1994 letter fails to meet the requirements of an informal claim. *See Hale v. United States*, 876 F.2d 1258, 1262 (6th Cir. 1989) (noting that informal request for tax refund must apprize I.R.S. that a refund is sought and for certain years). The 1994 letter fails to meet this standard. Plaintiffs correctly contend that deficiencies in timely filed informal claims have been overlooked when an amendment, even if untimely, remedies such deficiencies. *United States v. Kale*, 314 U.S. 186, 194 (1941). However, Plaintiffs have yet to point to an amendment that remedies any deficiencies in the 1994 letter.

---

holding unconstitutional the civil forfeiture statute, 18 U.S.C. § 981(a); and (6) injunctive relief prohibiting the United States and any of its agents from enforcing 18 U.S.C. § 981(a).

In an opinion issued March 9, 2000, the district court dismissed Plaintiffs' first amended complaint on motions of the federal Defendants and Oxford Bank for failure to state a claim under Rule 12(b)(6), and as to the state law fraud claim for failure to plead the claim with particularity as well as for other reasons; denied Plaintiffs' motion for partial summary judgment as to counts V and VI for declaratory and injunctive relief; and denied Plaintiffs' motion for leave to file a second amended complaint. *See Blakely v. First Fed. Sav. Bank & Trust*, 93 F. Supp. 2d 799 (E.D. Mich. 2000). We now **AFFIRM**.

## BACKGROUND

Plaintiffs and their wives jointly own Country Folk Art Shows, Inc. ("CFAS"), a business that sponsors and organizes country folk art exhibits throughout the country. During 1991 and 1992, the criminal investigation division of the Internal Revenue Service ("I.R.S.") launched an investigation into Plaintiffs' activities with regard to their operation of CFAS. The investigation revealed that Plaintiffs and their wives had failed to declare and pay income tax on the full amount of income derived from operation of CFAS. The investigation also revealed that Plaintiffs had violated laws against "structuring," by placing income in amounts less than $10,000 in various banks in order to avoid government reporting requirements on cash transactions which exceeded that amount.

In 1992, the government initiated a civil forfeiture action against Plaintiffs pursuant to 18 U.S.C. § 981(a). *See United States v. Certain Real Prop. Located at 6185 Brandywine Dr.*, No. 92-CV-40157 (E.D. Mich. filed September 25, 1992). The government also brought criminal charges against Plaintiffs relating to the tax evasion and structuring charges.

The parties entered into a consent judgment, which was consummated on September 25, 1992, and disposed of the civil forfeiture action. Under the terms of the consent judgment, Plaintiffs' property was forfeited, including real property and funds owned by Plaintiffs and their wives. As for the criminal charges against them, Plaintiffs and their wives pleaded guilty to one count of tax evasion. Plaintiffs also pleaded guilty to one count of willfully structuring bank deposits, pursuant to 31 U.S.C. § 5324.

Two years later, the United States Supreme Court decided *Ratzlaf v. United States*, 510 U.S. 135 (1994), holding that criminal convictions for willfully structuring currency transactions in violation of 31 U.S.C. § 5324 could be maintained only when the government proved that the defendant knew he was violating the structuring laws at the time he committed the offense. *Id.* at 137-38.

Plaintiffs served twenty-one months in prison for the structuring offense. In 1996, Plaintiffs moved to have their structuring convictions vacated under 28 U.S.C. § 2255. They argued that at the time of their guilty pleas a factual basis was not placed on the record showing that their structuring activities were "willful" as required by *Ratzlaf*. The government acknowledged that the factual bases for the pleas were insufficient. Thus, the district court granted Plaintiffs' motion to vacate their structuring convictions.

On October 13, 1998, Plaintiffs filed a motion under Federal Rule of Civil Procedure 60(b) to set aside the September 25, 1992 consent judgment. The district court denied the motion.

## DISCUSSION

On appeal, Plaintiffs challenge the district court's exercise of supplemental jurisdiction over their state law claims against Oxford Bank, the court's dismissal of their first amended complaint, and the district court's denial of Plaintiffs' motion to file a second amended complaint. We shall address each argument in turn.

*Blakely*, 93 F.Supp.2d at 806 n.8. We generally review a district court's order denying leave to amend a complaint for abuse of discretion. *Zeigler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 518 (6th Cir. 2001). However, when the district court's decision is based on the futility of the amendment, i.e., that the amended complaint would not withstand a motion to dismiss, we review the district court's decision *de novo*. *Id.*

The district court did not err in denying Plaintiffs' motion for leave to file a second amended complaint. The claims raised in the first and second amended complaints are essentially the same, and allowing amendment would have been futile. In their second amended complaint, Plaintiffs allege the following nine causes of action: (1) the federal Defendants violated Plaintiffs' due process rights by using fraud and duress to induce them to enter into the consent judgment, by creating an erroneous illegal interpretation of structuring laws, and by declining to set aside Plaintiffs' consent judgment after their convictions were set aside; (2) the consent judgment violates the excessive fines clause; (3) a declaratory judgment pursuant to 28 U.S.C. § 2201 that the consent judgment is void; (4) Reno and Green violated Plaintiffs' constitutional rights by refusing to return forfeited property; (5) a declaratory judgment striking down as unconstitutional the civil forfeiture statute, 18 U.S.C. § 981(a); (6) injunctive relief barring the United States from seizing property pursuant to § 981; (7) money damages against the federal and Bank Defendants for alleged intentional misrepresentations; (8) money damages for negligent misrepresentations; and (9) declaratory and injunctive relief striking down 31 U.S.C. § 5324 as being void for vagueness in violation of the due process clause. Thus, Plaintiffs sought to add three new causes of action, counts III, VIII, and IX. In addition, Plaintiffs argued that the United States' sovereign immunity, and thus the sovereign immunity

unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). The Court then concluded, "[a]s the sanctions imposed by the Ohio Supreme Court have already been perfected . . ., this past injury has no continuing, present adverse effects and cannot establish standing for declaratory and injunctive relief." *Id.*

This Court also noted that while past illegal conduct might constitute evidence relevant regarding whether there is a real and immediate threat of repeated injury, "where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Id.* at 833. Based on this principle, the Court further concluded that the threat of the plaintiff's future injury by the alleged illegal conduct was "highly conjectural, resting on a string of actions the occurrence of which is merely speculative." *Id.; see also Smith,* 573 F.Supp. at 608.

Plaintiffs have failed to show an injury in fact to seek injunctive relief in this case. The showing of past injury in the instant case is insufficient. The seizure of Plaintiffs' assets has already been perfected, therefore this past injury has no continuing, present adverse effects. Furthermore, any threat that injury to Plaintiffs will be repeated is only speculative at this point. Plaintiffs have failed to demonstrate that they continue or it is highly likely that they will continue to structure their banking transactions, that the government would bring civil forfeiture proceedings to effect a forfeiture of Plaintiffs' assets under § 981(a) and that the government would in fact effect a forfeiture of Plaintiffs' property in violation of Plaintiffs' due process rights or their rights against excessive fines. Accordingly, Plaintiffs lack standing to bring an action for injunctive relief and their claim was properly dismissed. *See Grendell*, 252 F.3d at 832-33.

## C.   District Court's Denial of Plaintiffs' Motion to File a Second Amended Complaint

The district court denied Plaintiffs' motion to file a second amended complaint on the grounds that it would be futile.

## A.   Supplemental Jurisdiction

We review a district court's determination as to whether it had supplemental jurisdiction over state law claims *de novo*. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 759 (6th Cir. 2000). A district court's decision to exercise supplemental jurisdiction over state law claims is reviewed for an abuse of discretion. *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998).

On appeal, Plaintiffs argue that the district court erred in exercising supplemental jurisdiction over its state law claim for fraud against Defendant Oxford Bank.[2] In their reply brief, Plaintiffs argue that the transaction that gave rise to their claims against the federal Defendants was the forfeiture proceedings and an "erroneous tax assessment" imposed on Plaintiffs by the I.R.S., and that Oxford was not directly involved in those claims. They argue that the false misrepresentations made by bank employees resulted in the

---

[2] We note at the outset that Plaintiffs' initial brief barely addresses the issue of whether the district court properly exercised supplemental jurisdiction over their claims. Plaintiffs' only substantive statement regarding the district court's exercise of jurisdiction is that the district court

erroneously denied plaintiffs' motion to sever these claims and remand them back to state court, saying that they were part of the "same case or controversy" as the forfeiture itself, and that subject matter jurisdiction was present under 28 U.S.C. § 1367(a) even though the bank employees' alleged actions had occurred months previously and had minimal factual nexus with the consent judgment of forfeiture.

*See* Plaintiffs' Br. at 59. It is only in their reply brief that Plaintiffs set forth a developed argument and citations to support their claim. *United States v. Crozier*, __ F.3d __, 2001 WL 876237, at *10 (6th Cir. Aug. 2, 2001) (holding that defendant could not address merits of claim of error for first time in reply brief even though defendant cited to statute governing issue in initial brief; claim of error deemed waived on appeal). Nevertheless, as discussed in the main text, we find that the district court did not abuse its discretion in entertaining Plaintiffs' state law fraud claim against Oxford Bank.

I.R.S. investigation and the "unlawful forfeiture." They contend these claims are separate from the claims advanced against the federal Defendants. We find these arguments unavailing.

"[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "In other words, if there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Campanella*, 137 F.3d at 892. Claims form part of the same case or controversy when they "derive from a common nucleus of operative facts." *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996); *accord White v. County of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993) (recognizing that claims form part of same case or controversy if they "revolve around a central fact pattern").

In the instant case, Plaintiffs' fraud claim against Oxford Bank is part of the same case or controversy as its fraud claim and all other claims against the federal Defendants. In their first amended complaint, Plaintiffs allege that Defendant Oxford Bank acted in concert with the federal Defendants in defrauding them, which resulted in the forfeiture of certain of their assets. Plaintiffs allege that the "bank defendants facilitated the wrongful taking of petitioners' assets [i.e., the forfeiture of Plaintiffs' property to the government]" by failing to notify Plaintiffs of the laws against structuring banking transactions to avoid federal reporting requirements. (J.A. at 20.) Plaintiffs further allege that the bank defendants, presumably this includes Defendant Oxford Bank, "reported the structured deposits to pertinent agencies in the United States Department of Treasury. All bank defendants cooperated with the United States Attorney in consummating the illegal forfeiture." (J.A. at 21.) They allege, "[b]y continuously representing that petitioners' deposits would be going into their own accounts and at the same time inducing

**5.  Count VI -- Plaintiff's Claim for Injunctive Relief Barring the United States and Any of Its Agents from Enforcing § 981(a)**

As their sixth cause of action, Plaintiffs sought to enjoin enforcement of § 981(a) either *in toto* or as applied to currency structuring offenses on the basis that the statute is unconstitutional. Plaintiffs moved for summary judgment on this claim as well. The district court dismissed Plaintiffs' claim for injunctive relief concluding that it was unlikely Plaintiffs would succeed on the merits of their underlying claim, suffer irreparable harm absent an injunction, or that the public interest would be served by the issuance of an injunction. We conclude that the district court properly dismissed Plaintiffs' claims inasmuch as Plaintiffs do not have standing to bring this cause of action. *See Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (explaining that standing is a threshold question in every federal case); *see also City Mgmt. Corp. v. United States Chem. Co., Inc.*, 43 F.3d 244, 251 (6th Cir. 1994) (explaining that this Court may affirm the district court on any grounds supported by the record).

When seeking injunctive relief, a plaintiff "must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Grendell*, 252 F.3d at 832. In *Grendell*, this Court held that the plaintiff did not have standing to sue for injunctive relief preventing enforcement of a state court sanctions rule on the ground that the rule was facially unconstitutional. *Id.* at 830. The Court rejected the plaintiff's argument that because he was previously sanctioned allegedly without due process and he was subjected to continuing adverse effects of the sanction, he had established standing. The Court noted, "the mere fact that [the plaintiff] was previously sanctioned . . . is not an adequate injury in fact to confer standing for declaratory and injunctive relief." *Id.* at 832. The Court continued, "'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if

unconstitutional because it violates the Fifth Amendment due process clause and the Eighth Amendment excessive fines clause. However, Plaintiffs fail to allege that they continue to structure their banking transactions or that they anticipate structuring their banking transactions in the immediate future. Further, Plaintiffs have failed to allege that they are fearful that the government will seize their property based on allegations that they are structuring their banking transactions. Essentially, Plaintiffs have failed to allege that they are engaging in conduct that falls within the confines of § 981(a).

Plaintiffs argue that the loss of $4 million, their forfeited assets, suffices to show they have suffered sufficient injury to seek judicial relief in striking down the statute. However, that Plaintiffs have already forfeited property under § 981(a) is irrelevant where Plaintiffs have failed to allege with credible facts that they will be subjected to forfeiture of their assets under § 981(a) in the immediate future. *See, e.g., Versarge v. Township of Clinton N.J.*, 984 F.2d 1359, 1369 (3d Cir. 1993) (holding that firefighter who was expelled from volunteer fire company could not bring declaratory action seeking declaratory judgment that provision under which he was expelled was overbroad because he had not alleged with sufficiently credible facts that the challenged provision would be applied against him in the future); *Smith v. Montgomery County, Md.*, 573 F. Supp. 604, 609 (D. Md. 1983) (holding that former detainee who alleged that she had been strip-searched without probable cause before being incarcerated but who could not credibly allege that she would again be arrested and strip-searched without probable cause did not have standing to seek declaratory relief with respect to constitutionality of the strip search). The district court properly concluded that declaratory relief was inappropriate under the circumstances of this case.

them to make the deposits in a manner that would lead to the United States Attorney and Internal Revenue Service taking all the funds so deposited of the I.R.S., the bank defendants participated with various officials of the United States in concerted activities constituting bank fraud." (J.A. at 21.) Plaintiffs continued, "the United States Attorney and various I.R.S. Agents managed to enlist the bank defendants in what has now been discovered to be a scheme to commit bank fraud. While bank personnel may not have understood the scheme in its entirety, their actions in inducing plaintiffs to make the structured deposits and their actions in cooperating with the United States in consummating the fraud were deliberate and intentional." (J.A. at 21-22.) As discussed later, Plaintiffs' other claims including their constitutional claims and claims for declaratory and injunctive relief all revolve around the civil forfeiture of their assets. Thus, Plaintiffs' fraud claim against Oxford is intertwined with all Plaintiffs' claims against the federal Defendants.

Plaintiffs' first amended complaint demonstrates that the claim against Defendant Oxford Bank and their claims against the federal Defendants revolve around the same fact pattern. Plaintiffs allege that all Defendants acted in concert in a scheme to defraud Plaintiffs, inducing them to make deposits that would violate structuring laws. Moreover, as explained below, all Plaintiffs' claims revolve around the purported illegality of the consent judgment, which Plaintiffs entered into as a result of the structuring violations asserted against them. Thus, the testimony underlying Plaintiffs' claims in count I against Oxford will undoubtedly involve factual overlap and many of the same witnesses as Plaintiffs' claims against the federal Defendants. Therefore, Plaintiffs' claims against Oxford and the federal Defendants form part of the same case or controversy. *See Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995) (noting that for claims to form part of the same case or controversy only a loose factual connection is necessary). Thus, the district court had supplemental jurisdiction over Plaintiffs' fraud claim against Defendant Oxford Bank.

Moreover, the district court did not abuse its discretion in choosing to exercise its supplemental jurisdiction.

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it had original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Plaintiffs argue that this case raises complex or novel state law issues because "it requires the court to determine what degree of causation is required under Michigan's common law of misrepresentation and to compare those with the actual causal role of Oxford's misrepresentations." We disagree. This case does not present complex or novel issues of state law. It involves a fraud claim. All fraud claims require that a plaintiff show the injury he suffered was caused by the defendant's representation. *See Hord v. Envtl. Research Inst. of Mich.*, 579 N.W.2d 133, 135 (Mich.Ct.App. 1998). Thus, this case, as in all others, will involve an inquiry into the alleged misrepresentations Defendant made and whether, under Michigan law, such misrepresenations caused Plaintiffs' injuries. *Id.*

Further, Plaintiffs' fraud claim does not predominate over the claims over which the district court had original jurisdiction. Plaintiffs' primary claims are against the federal Defendants. Likewise, this case does not present, nor do Plaintiffs argue that there are, other compelling reasons for declining jurisdiction.

Finally, although Plaintiffs are correct that when a district court dismisses claims over which it had original jurisdiction,

clause and the Eighth Amendment's excessive fines clause. They further moved for summary judgment on this claim. The district court dismissed Plaintiffs' declaratory relief claim because it concluded that the action was not appropriate for declaratory relief under the Declaratory Judgment Act. We agree.

Plaintiffs argue that the Eighth Amendment's excessive fines clause prohibits imposing forfeitures or fines that are "grossly disproportionate to the gravity of the offense on which they are based." Plaintiffs contend that if they can prove that the amount of their forfeited assets in the instant action is disproportionate to "their concededly noncriminal offense," they will have shown that retention of their property violates the excessive fines clause. They further argue that § 981(a) should be struck down because, on its face, it allows the government to inflict grossly disproportional punishment.

Before a court can grant relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, the court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy [and] reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (citations and internal quotation marks omitted); *see also Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167-68 (7th Cir. 1969) (explaining that "primary purpose of the [Declaratory Judgment] Act is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued") (citation and internal quotation marks omitted). A constitutional challenge to any statute seeking declaratory relief striking down that statute "must be presented in the context of a specific live grievance." *Golden,* 394 U.S. at 108.

Here, Plaintiffs have failed to allege sufficient facts to support a conclusion that an actual controversy exists. Plaintiffs' first amended complaint alleges that § 981(a) is

Plaintiffs argue in the instant case that Green and Reno's conduct was not covered by absolute immunity because they acted as mere custodians of property and were thus engaged in administrative conduct rather than advocacy. This argument is unavailing. The prosecutor's decision not to agree to vacate a civil forfeiture judgment, just as his decision to institute the forfeiture proceedings in the first instance, is in the nature of advocacy rather than administrative conduct, and is covered by the absolute immunity doctrine. *See Cooper*, 203 F.3d at 947.

In any event, Green and Reno are entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the instant case, Green and Reno's conduct did not violate clearly established law. Plaintiffs complain of Green and Reno's failure to agree to vacate their civil forfeiture judgments. Plaintiffs, however, have failed to demonstrate that clearly established law existed that would support setting aside the civil forfeiture. Plaintiffs cannot rely upon *Ratzlaf,* because the Supreme Court noted that its decision, which resulted in vacation of Plaintiffs' criminal conviction, did not apply to civil forfeitures under § 981(a). *See Ratzlaf*, 510 U.S. at 145 n.16. The *Ratzlaf* decision actually supports the conclusion that Plaintiffs' alleged rights were not clearly established. Plaintiffs provide no other basis to conclude that Defendants Reno and Green violated Plaintiffs' clearly established constitutional rights so as to vitiate Defendants' qualified immunity.

4.    **Count V  -- Declaratory Relief striking down the Civil Forfeiture Statute, 18 U.S.C. § 981(a), as Unconstitutional.**

Plaintiffs alleged in Count V of their complaint that § 981(a) was violative of the Fifth Amendment's due process

it generally should remand state law claims to state court, that rule is not absolute. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("[T]here is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims."). Moreover, 28 U.S.C. § 1367(c), itself, makes clear that a district court may, not must, decline to exercise supplemental jurisdiction in such instances. The district court's decision to exercise supplemental jurisdiction at this point depends on "judicial economy, convenience, fairness, and comity." *Musson,* 89 F.3d at 1254 (citation and internal quotation marks omitted).

Here, the district court had before it motions to dismiss from both the federal Defendants and Defendant Oxford Bank. The district court heard oral argument on all motions including the Defendant Oxford Bank's motion to dismiss. The district court thereafter determined that Plaintiffs' state law fraud claim could not survive as a matter of law. The parties had already argued the merits of the claims to the district court. It would make little sense to require Defendant Oxford Bank to expend additional resources making the same arguments in state court. Under these circumstances, the interests of judicial economy overcame the presumption against retention of pendent state law claims. *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993) (noting that "if the correct disposition of a pendent claim or action was so clear as a matter of state law that it could be determined without further trial proceedings and without entanglement with any difficult issues of state law, considerations of judicial economy warranted retention and decision rather than relinquishment of the case to the state court"); *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 n.4 (2d Cir. 1974) (explaining that exceptional circumstances exist to overcome presumption against retaining supplemental jurisdiction of pendent state law claims after Rule 12(b)(6) dismissal "when dismissal of the pendent claims would . . . sharply clash with . . . serv[ing] the ends of judicial economy, convenience or fairness to litigants") (citations and internal quotation marks omitted). Therefore, the district court did not

abuse its discretion in exercising supplemental jurisdiction over Plaintiffs' state law fraud claim.

## B. Dismissal of Plaintiffs' First Amended Complaint

We review *de novo* the district court's dismissal of an action for failure to state a claim under Rule 12(b)(6). *Pension Benefit Guar., Corp. v. E. Dayton Tool & Die Co.*, 14 F.3d 1122, 1127 (6th Cir. 1994). The Court must "construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him to relief." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* In addition, we review *de novo* the district court's dismissal of a claim for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1). *Haio v. INS*, 199 F.3d 302, 304 (6th Cir. 1999). Below, we address each of the six claims Plaintiffs alleged in their first amended complaint.

### 1. Count I -- Plaintiffs' Fraud Claim

Plaintiffs alleged a fraud claim under the laws of Michigan against the federal Defendants as well as Defendant Oxford Bank.[3] Because the analysis with respect to the claim against the government differs from the analysis of the claim against Defendant Oxford Bank, we will address the fraud claim against each separately.

#### a. United States of America

The district court properly dismissed Plaintiffs' claim against the government under Rules 12(b)(1) and 12(b)(6).

---

[3]The government was actually substituted as the sole federal defendant relative to this claim because it certified that all individual federal defendants acted within the scope of their employment with respect to the events underlying the fraud claim. *See* 28 U.S.C. § 2679(d)(2).

Thus, the district court properly dismissed counts II and III of Plaintiffs' first amended complaint for violations of the due process clause and the excessive fines clause, respectively, because they were barred by the doctrines of sovereign immunity and claim preclusion.

### 3. Count IV -- Claims for Violations of Plaintiffs' Constitutional Rights against Defendants Reno and Green in Their Individual Capacities

Plaintiffs alleged in their fourth claim that Defendants Reno and Green violated Plaintiffs' due process rights under the Fifth Amendment and their rights against excessive fines under the Eighth Amendment arising out of the forfeiture of and refusal to return Plaintiffs' assets. These claims were properly dismissed under the doctrines of absolute prosecutorial and qualified immunity.

Absolute prosecutorial immunity applies where a prosecutor's activities are "intimately associated with the judicial phase of the criminal process . . . ." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). This Court has stated that prosecutorial immunity extends to proceedings where the prosecutor institutes a civil forfeiture proceeding. *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000); *accord Schrob v. Catterson*, 948 F.2d 1402, 1412 (3d Cir. 1991) (holding that absolute prosecutorial immunity extends to civil forfeiture proceedings). Prosecutorial immunity shields a prosecutor from § 1983 injury. *Cooper*, 203 F.3d at 947. Prosecutorial immunity extends to those activities that occur in the prosecutor's role as advocate for the government. *Id.* If, however, the prosecutor is only serving in an investigatory capacity, i.e., activities "normally performed by a detective or police officer such as searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested [he] is entitled only at most to qualified immunity." *Id.* (citation and internal quotation marks omitted).

While Plaintiffs did not allege waiver of sovereign immunity in their first amended complaint, they did argue in their proposed second amended complaint that waiver of sovereign immunity was proper under the APA.[7]

The APA provides in pertinent part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. The civil forfeiture in Plaintiffs' case was achieved by a consent judgment in judicial proceedings; the civil forfeiture did not involve agency action. By its own terms, § 702 only applies where the party seeks judicial review of agency action. Because the instant forfeiture took place in the context of a civil judicial proceeding, there is no agency action for the district court or this Court to review. *See Comm. of Blind Vendors of D.C. v. District of Columbia*, 28 F.3d 130, 134 (D.C. Cir. 1994) (holding APA, 5 U.S.C. § 702, "inapplicable because no agency proceeding took place for the court to review"). The APA therefore cannot be the basis for a waiver of sovereign immunity in the case at bar.[8]

---

[7] We later discuss the district court's decision to deny Plaintiffs' motion to file a second amendment complaint.

[8] We note that the cases cited by Plaintiffs in support of their proposition involve administrative, rather than judicial forfeitures, *see* Plaintiff's Br. at 35, and are consequently of no moment to Plaintiffs' case.

First, Plaintiffs failed to exhaust their administrative remedies in a timely fashion in accordance with the Federal Torts Claims Act ("FTCA") prior to bringing the instant claim against the government, which deprived the district court of jurisdiction to entertain their claims. Moreover, as discussed later, Plaintiffs are precluded from relitigating or litigating issues that were raised or that could have been raised in the prior civil forfeiture proceeding before the district court related to the legitimacy of the consent judgment.

The district court dismissed Plaintiffs' fraud claim against the government for failure to exhaust their administrative remedies. To bring a tort action against the government, the plaintiff must first establish that the government has waived sovereign immunity. *See Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991) (*per curiam*) (citations omitted). The government has waived its sovereign immunity to suits for tort actions under the FTCA, but only insofar as the plaintiff has exhausted his administrative remedies. 28 U.S.C. § 2675(a)*; Lundstrum,* 954 F.2d at 1145 ("A prerequisite to suit under the FTCA, . . . is the exhaustion by the plaintiff of administrative remedies."). Section 2675(a) provides that an "action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). A claim submitted to the proper administrative agency is considered sufficient to satisfy the exhaustion requirement if it is a "written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death." *Lundstrum*, 954 F.2d at 1145.

Plaintiffs argue that they in fact filed an administrative claim with the Department of Justice on December 1, 1997 when they filed a petition for remission of the assets forfeited

under the consent judgment.[4]   The district court rejected Plaintiffs' argument that the petition for remission constituted an administrative claim because it concluded that the petition did not request damages and it did not contain a sum certain. We agree.

"[T]he circumstances of [the waiver of sovereign immunity] must be scrupulously observed and not expanded by the courts." *Kokotis v. United States Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000).  Further, an administrative claim under the FTCA must be in careful compliance with its terms. *Id.*  In order for a claim to be complete, it must include a claim for damages in a sum certain. *Glarner v. United States Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994) (explaining that in this circuit requesting a sum certain is a necessary prerequisite to filing a FTCA claim); *Kokotis*, 223 F.3d at 278 ("Requesting a sum certain is a necessary element of any FTCA administrative claim."); 28 C.F.R. § 14.2(a) (1999) (listing requirements for a properly presented claim to a federal agency).  A request for the return of property the government has seized is not tantamount to presenting a proper  FTCA administrative claim. *See Best Bearings Co., v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972), *abrogated  on other grounds as recognized by Kanar v. United States*, 118 F.3d 527 (7th Cir. 1997).

In the instant case, Plaintiffs did not request damages. Plaintiffs admit in their brief that the December 1997 correspondence sought return of "all forfeited proceeds or their monetary equivalent." In addition, Plaintiffs did not request a "sum certain" because they requested first and foremost return of the forfeited assets themselves.

The district court properly determined that, in any event, Plaintiffs' petition for remission fell outside the two-year

---

[4] In their brief, Plaintiffs refer to this correspondence as the December 2, 1997 administrative claim; however, the document, as provided in the Joint Appendix,  is dated December 1, 1997. (J.A. at 142.)

judgment for civil  forfeiture of their properties.  As we explained above, the letter indicates that Plaintiffs were aware or had reason to know that their property was allegedly fraudulently taken as of that date, i.e., August  1994. However, even if Plaintiffs' cause of action was timely under the Michigan statute of limitations, it fails for the other reasons cited, and the district court properly dismissed their claim.

### 2.   Counts II and III -- Claims of Fifth Amendment Due Process and Eighth Amendment Excessive Fines Violations

The district court dismissed Plaintiffs' constitutional claims for violations of the Fifth Amendment's due process clause and the Eighth Amendment's excessive fines clause against the United States and the individual federal Defendants in their official capacities because it concluded that the claims for money damages were barred by sovereign immunity. We agree.  Moreover, as we have already discussed, Plaintiffs' claims are also barred by the doctrine of claim preclusion as these claims could have been litigated in the suit involving the civil forfeiture.

The United States as a sovereign is immune from suit for money damages unless it unequivocally has waived such immunity. *Reed v. Reno*, 146 F.3d 392, 397-98 (6th Cir. 1998).  The doctrine of sovereign immunity not only bars suits against the United States when the plaintiff seeks monetary damages but also extends to suits for money damages against officers and agents of the United States in their official capacities. *Id; Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 115-16 (6th Cir. 1988) (*per curiam*).  Because Plaintiffs' claims clearly seek money damages for the property they claim was forfeited in violation of the constitution, their claims are barred.

Plaintiffs also argue on appeal that the Administrative Procedure Act ("APA") waives sovereign immunity for suits for return of forfeited assets or their monetary equivalent.

Plaintiffs' reliance on *Lopez* is clearly misplaced. The *Lopez* Court determined that release of financial records after a verbal request rather than a written request and release of information other than the account holder's name and the nature of the suspected illegal activity was outside the scope of § 3403(c). *See Lopez*, 129 F.3d at 1190-91. *Lopez* does not apply in the instant case because Plaintiffs do not allege that Defendant Oxford Bank released information outside the scope of § 3403(c)--the reporting of their suspected illegal activity is exactly what is at issue--or released information prior to obtaining a written request from the government. Therefore, the district court properly dismissed Plaintiffs' fraud claim based on Defendant's immunity from suit under § 3403(c).

The district court also dismissed Plaintiffs' fraud claim on the ground that Plaintiffs filed their action outside Michigan's six-year statute of limitations for such actions. Plaintiffs argue that their claim for fraud did not accrue until at least September 25, 1992, the date of the consent judgment for civil forfeiture. Plaintiffs filed their complaint in state court on September 23, 1998. Under Michigan law, a cause of action accrues when the plaintiff can allege each element of the asserted claim. *Moll v. Abbott Labs.*, 506 N.W.2d 816, 824 (Mich. 1993). Further, Michigan courts apply the discovery rule, whereby a claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence, should have discovered, an injury and causal connection between his injury and the defendant's conduct. *Id.* (discussing discovery rule in the context of a products liability action); *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236-38 (6th Cir. 1992) (holding that discovery accrual rule applies to causes of action under Michigan law for fraud).

In the instant case, the record suggests that Plaintiffs were not injured by the alleged fraud at least until the consent judgment for civil forfeiture was entered, which was September 25, 1992. Further, it was not until August 1994 that Plaintiffs sought to negotiate an agreement vacating their convictions for a structuring offense and the consent

limitations period for filing an administrative claim under the FTCA and thus could not serve as a valid administrative claim. Under the FTCA, a district court does not have jurisdiction over an action filed pursuant thereto if the plaintiff did not file an administrative claim within the two-year limitations period under 28 U.S.C. § 2401(b). That section states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

*Id.* Plaintiffs claim accrued when they discovered or had reason to discover that their property allegedly had been fraudulently forfeited. *See Polanco v. United States Drug Enforcement Admin.*, 158 F.3d 647, 654 (2d Cir. 1998).

Here, the underlying consent judgment in the civil forfeiture of Plaintiffs' assets was entered on September 25, 1992, more than five years before they filed their petition for remission. Moreover, Plaintiffs wrote a letter in August of 1994 to two Assistant United States Attorneys seeking to negotiate an agreement vacating their convictions for a structuring offense and the consent judgment for civil forfeiture of their properties.[5] The letter indicates that

---

[5] For the first time on appeal, Plaintiffs argue that this August 17, 1994 letter also constitutes an administrative claim sufficient to satisfy the requirements of the FTCA. We reject this argument. This letter was not in the record before the district court when it rendered its disposition on the motion to dismiss. The record was supplemented with the letter by stipulation of the parties over three months after the district court had dismissed Plaintiffs' claims. Because Plaintiffs raise this issue for the first time on appeal and the district court did not have an opportunity to address the same, we hold that Plaintiffs have waived our consideration of the letter as possibly satisfying the exhaustion requirement with regard to any their claims. *See White v. Anchor Motor Freight, Inc.*, 899 F.2d

Plaintiffs believed that their property or assets were improperly or wrongfully forfeited. (J.A. at 88.) Therefore, at the latest, Plaintiffs were aware or had reason to know that their property was allegedly fraudulently taken in August of 1994. Plaintiffs' December 1997 petition for remission was therefore untimely.

Plaintiffs argue that the December 1997 petition was timely because their claim for damages for the improper forfeiture of their assets did not accrue until their convictions for the underlying structuring charges were overturned, citing *Heck v. Humphreys*, 512 U.S. 477, 487 (1994). In *Heck*, the Supreme Court held that a cause of action under § 1983 for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated. *Id.*; *see also Bradshaw v. Jayaraman*, No. 98-6710, 1999 WL 1206870, at *2 (6th Cir. Dec. 9, 1999) (FTCA claims properly dismissed as "[a] plaintiff may not bring . . . a suit for monetary damages under federal law until his conviction has been reversed . . . .").

However, Plaintiffs' reliance on *Heck* is misplaced. Plaintiffs' current claim is not based on an improper or illegal conviction. The present claim is based on an allegedly improper civil forfeiture. The forfeiture and the conviction are two separate proceedings that require different levels of proof and the vacation of Plaintiffs' criminal conviction does not require a conclusion that the civil forfeiture was also improper. *See Ratzlaf*, 510 U.S. at 145 n.16 (noting that failure to show willfulness in structuring cash transactions, which was the basis for overturning Plaintiffs' convictions,

---

555, 559 (6th Cir. 1990) (finding that on appeal "we review the case presented to the district court rather than a better case fashioned after the district court's order.") (citation omitted); *cf. In re Blazo Corp. v. Carman*, No. 94-3797, 1995 WL 764130, at *3 (6th Cir. Dec. 27, 1995) (citing *Skotak v. Tenneeco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992) (unpublished) (explaining that on summary judgment, although record is reviewed *de novo*, appellate court will not consider evidence or arguments not presented to the district court for its consideration on the motion)).

Section 3403(c) provides:

Nothing in this chapter shall preclude any financial institution, or any officer, employee, or agent of a financial institution, from notifying a Government authority that such institution, or officer, employee, or agent has information which may be relevant to a possible violation of any statute or regulation. Such information may include only the name or other identifying information concerning any individual, corporation, or account involved in and the nature of any suspected illegal activity. Such information may be disclosed notwithstanding any constitution, law, or regulation of any State or political subdivision thereof to the contrary. Any financial institution, or officer, employee, or agent thereof, making a disclosure of information pursuant to this subsection, shall not be liable to the customer under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the customer of such disclosure.

12 U.S.C. § 3403(c). Plaintiffs do not dispute that the alleged disclosures by Defendant Oxford Bank, which serve as the basis for the fraud claim, were made pursuant to § 3403(c). Plaintiffs nevertheless argue that § 3403(c) does not protect Defendant Oxford Bank, relying on *Lopez v. First Union Nat'l Bank of Florida*, 129 F.3d 1186, 1190 (11th Cir. 1997).

However, § 3403(c) on its face applies in the instant case such that Defendant Oxford Bank is immune from suit. *See Wayne v. Commonwealth Bank*, 846 F.Supp. 321, 324 (W.D. Pa. 1994) (holding that § 3403 barred plaintiff's negligence and bad faith claims against bank for reporting to federal authorities that plaintiffs were involved in a check kiting scheme, which they claim was untrue; bank had no fiduciary duty "to refrain from reporting suspected illegal activity on the part of their customers").

"pertinent agencies in the United States Department of Treasury." (J.A. at 21.) Plaintiffs allege that the banks "facilitated the wrongful taking of petitioners' assets" by concealing from them "the fact that their tellers were inducing them to make cash deposits in ways that could lead to government confiscation of all monies deposited." (J.A. at 20.) The crux of Plaintiffs' claim against Oxford is that while they were informed that banks must report transactions to authorities involving amounts in excess of $10,000, they "were not informed of laws against currency structuring or of any risk of forfeiture related to it." (J.A. at 20-21.)

The district court dismissed Plaintiffs' fraud claim against Defendant Oxford Bank on a number of grounds including (1) failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b); (2) that Defendant Oxford Bank's conduct was not the proximate cause of Plaintiffs' injury; (3) Plaintiffs' fraud claims were barred by the six-year statute of limitations under Michigan law; (4) that Plaintiffs had no claim for relief from the consent judgment arising out of any alleged fraud because Fed. R. Civ. P. 60(b)(3) requires such actions be entered into within one year after entry of the judgment; and (5) that 12 U.S.C. § 3403(c) provided immunity to Oxford Bank from suit. Plaintiffs only argue on appeal that the district court erred in concluding that Defendant Oxford Bank was immune from suit under 12 U.S.C. § 3403(c) and erred in determining that Plaintiffs' suit fell outside the six-year statute of limitations under Michigan law. Plaintiffs have therefore waived review of the district court's decision with respect to all other grounds for dismissal. S*ee United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (noting that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (citation and internal quotation marks omitted).

However, of the two issues preserved for this appeal, the district court properly concluded that Defendant Oxford Bank was immune from suit under § 3403(c), although we believe the statute of limitations issue is a closer question.

does not prevent a civil forfeiture of structured assets under 18 U.S.C. § 981(a)). Therefore, unlike claims based on illegal convictions, Plaintiffs did not have to have their criminal convictions vacated before laying claim to assets taken in the separate civil forfeiture proceeding.

Moreover, the district court properly dismissed Plaintiffs' claims by concluding that the consent judgment in the prior civil forfeiture action precluded Plaintiffs from arguing that the assets were improperly taken under the doctrine of *res judicata* or claim preclusion. "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Heyliger v. State Univ.of Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. 1997). A claim is precluded if (1) there is a final judgment on the merits in an earlier action; (2) there is a sufficient identity between the parties in the two suits; and (3) there is a sufficient identity of the causes of action in the two suits. *Ortiz-Cameron v. Drug Enforcement Admin.*, 139 F.3d 4, 5 (1st Cir. 1998).

A consent judgment, which has been freely negotiated by the parties and has been approved by the court, has the full effect of final judgment for purposes of claim preclusion. *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 858 (5th Cir. 2000). In the instant case, the parties fully negotiated the underlying consent judgment. Further, Plaintiffs' attempts to have the consent judgment vacated have thus far failed. Plaintiffs filed a Rule 60(b) motion before the district court on October 13, 1998. The court denied Plaintiffs' Rule 60(b) motion, concluding that *Ratzlaf* did not require that the consent judgment be set aside or vacated. The district court further concluded

"courts have held that a settlement in a civil forfeiture proceeding, even if prompted by a criminal conviction, is based on an agreement of the parties, and not on an underlying criminal conviction. Accordingly, a consent judgment of forfeiture may not be set aside pursuant to

Rule 60(b)(5) simply because the criminal conviction is later overturned."

*See Blakely,* 93 F. Supp. 2d at 802 (discussing proceedings in the Rule 60(b) action). Plaintiffs initially appealed that decision to this Court, but they later voluntarily dismissed the appeal as memorialized by order of this Court dated September 21, 2000. *See United States v. Real Prop. 6185 Brandywine Drive, Holly, Groveland Township, Oakland County Mich.*, No. 99-1700 (6th Cir. Sept. 21, 2000) (order granting appellants' motion to dismiss). Plaintiffs have had a full and fair opportunity to litigate any issues that could have been brought in the civil forfeiture proceeding, either prior to the consent judgment or during the proceedings in connection with its Rule 60(b) motion to vacate. Therefore, we conclude that the consent judgment is a final judgment for purposes of claim preclusion.

Further, the parties in interest in both this proceeding and the civil forfeiture proceeding are the same, the government and Plaintiffs. In addition, the facts underlying the instant case are the same facts underlying the civil forfeiture action. Plaintiffs are therefore barred by claim preclusion from litigating matters regarding the legitimacy of the consent judgment in the civil forfeiture proceeding. *See Ortiz-Cameron*, 139 F.3d at 6.

Citing *Libretti v. United States*, 516 U.S. 29 (1995), Plaintiffs argue that the consent judgment is void because there was an insufficient factual basis to support the consent judgment, and as such it cannot be accorded preclusive effect. Plaintiffs place too much reliance on *Libretti*. In that case, the defendant entered into a plea agreement, whereby in addition to pleading guilty to certain drug charges, he also agreed to forfeiture of numerous items under the applicable forfeiture statute. *Id*. at 32-34. The issue before the Court was the duty of a district court "to establish a 'factual basis' for the forfeited property covered under Federal Rule of Criminal

Procedure 11(f)."[6] *Id*. at 38. The defendant argued that "[a]bsent such a finding, . . . even his concession to forfeiture in the plea agreement cannot authorize forfeiture." *Id*. The Court held that the rule imposes no obligation on the district court "to inquire into the factual basis for a stipulated forfeiture of assets embodied in a plea agreement." *Id*. at 51-52. Further, for purposes of the instant action, *Libretti* does not hold that a valid civil consent judgment entered into by a defendant becomes void for purposes of claim preclusion because the defendant's criminal conviction is later overturned.

Indeed, a consent judgment, although a judicial decree, is essentially an agreement between the parties and should be construed as a contract. *See Secs. & Exch. Comm'n v. Levine*, 881 F.2d 1165, 1178 (2d Cir. 1989). "[C]onsent judgments should be interpreted in a way that gives effect to what the parties have agreed to, as reflected in the judgment itself or in documents incorporated in it by reference . . . ." *Id*. By entering into a consent decree, the "parties waive their right to litigate the issues involved in the case . . . ." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Further, consent decrees should be construed "without reference to the legislation the Government originally sought to enforce but never proved applicable through litigation." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236-37 (1975). Thus, by entering into the consent decree, Plaintiffs entered into a binding agreement irrespective of their criminal convictions. The doctrine of claim preclusion, therefore, bars Plaintiffs from litigating the issues involved in the forfeiture action.

### b. Oxford Bank

Plaintiffs allege that the bank defendants, presumably including Oxford, reported their structured deposits to

---

[6] Fed. R. Crim. P. 11(f) provides, "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such a plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."