**Arnel MCKENZIE, Jr., Plaintiff–Appellant,**

**v.**

**The CITY OF DETROIT, et al. Defendants–Appellees,**

No. 02–1238.

United States Court of Appeals, Sixth Circuit.

Aug. 27, 2003.

Rae A. Anderson, Rockwood W. Bullard, III, Bullard, Anderson & Anderson, Clarkston, MI, for Plaintiff–Appellant.

Lamont E. Buffington, Rosalind Rochkind, John J. Gillooly, Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, MI, for Defendant–Appellee.

Before KENNEDY, GILMAN, and GIBBONS, Circuit Judges.

KENNEDY, Circuit Judge.

On appeal, plaintiff Arnel McKenzie challenges the district court's continued exercise of supplemental jurisdiction over McKenzie's state-law assault and battery claim after it dismissed McKenzie's federal claims, and challenges the district court's award of summary judgment against McKenzie on his assault and battery claim. For the reasons addressed below, we affirm the district court's exercise of supplemental jurisdiction, but reverse the district court's award of summary judgment and remand to the district court for trial.

## I. Procedural History

Plaintiff McKenzie filed this action in the Wayne County Circuit Court against the City of Detroit, its police department, its police chiefs, and its officer Christopher Truel, alleging violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983, assault and battery, and negligent supervision and training. Defendants removed the suit to the U.S. District Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1441 and 1443(2). Defendants moved for summary judgment. At the initial hearing on the motion, the district court granted summary judgment to all of the defendants on all of the claims, except for those against Officer Truel. The district court found that summary judgment for Truel was inappropriate because the dispute of fact regarding the degree to which plaintiff was turning around when Truel shot him precluded the court from determining the issue of qualified immunity. Defendant Truel moved for reconsideration.

In a hearing on January 14, 2002, the district court granted defendant Truel

summary judgment on both the state assault and battery claim and the § 1983 claim, thereby granting the defendant's motion for reconsideration. With respect to the assault and battery claim, in particular, the district court found that Truel acted in self-defense when he first shot McKenzie when McKenzie turned between forty-five and ninety degrees toward the officer while holding a rifle-an action sufficient to "raise reasonable concerns in any reasonable officer's mind." The district court underscored that, while McKenzie was turning toward Truel, Truel's shot only grazed McKenzie in the back. The district court also held that Truel acted in self-defense when Truel subsequently shot McKenzie while he was lying on the ground after the first round of shots because McKenzie "appeared to be presenting a threat in reaching for the rifle," which was accessible to him. For these reasons, the district court granted Officer Truel qualified immunity for shooting McKenzie.

Plaintiff McKenzie appeals only the summary judgment in favor of defendant Truel on the state assault and battery claim. In particular, plaintiff argues that the district court, after dismissing his federal claims, improperly exercised supplemental jurisdiction over his state claim; McKenzie requests that we remand the assault and battery claim to the district court with the instruction that it remand that claim to the state court for adjudication.

## II. The District Court Properly Continued to Exercise Pendent Jurisdiction over the Assault and Battery Claim after Dismissing the Federal Claim

We review a district court's decision to exercise pendent jurisdiction over state law claims for an abuse of discretion.

*Blakely v. United States*, 276 F.3d 853, 860 (6th Cir.2002). In *Carnegie–Mellon University v. Cohill*, the Supreme Court held that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity ... to decide whether to exercise jurisdiction over a case ... involving pendent state-law claims." 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). As the Court observed, "[w]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its *early stages* and only state-law claims remain, the federal court *should* decline" to exercise its jurisdiction. *Id.* (emphasis added) (holding that a district court has discretion either to dismiss the case without prejudice or to remand to state court based on the pendent jurisdiction doctrine's underlying policies). However, the Court was quick to caution that this statement does not "establish a mandatory rule to be applied inflexibly to all cases." *Id.* at 350 n. 7, 108 S.Ct. 614. As 28 U.S.C. § 1367(c) itself makes clear, "district courts *may* decline to exercise supplemental jurisdiction ... [if] the district court has dismissed all claims over which it had original jurisdiction." (emphasis added). Moreover, in *Blakely v. United States*, this Court recognized that the general applicability of this non-mandatory presumption depends upon "judicial economy, convenience, fairness, and comity." 276 F.3d at 863. There, the district court, after properly dismissing plaintiffs' federal-law claims, did not abuse its discretion in exercising supplemental jurisdiction over plaintiffs' state-law claim as the parties had already argued its merits to the district court and, thus, interests in judicial economy "overcame the presumption against retention of pendent state law claims." *Id.*

■ Here, the district court did not abuse its discretion in continuing to exercise supplemental jurisdiction over plaintiff McKenzie's state-law assault and battery claim even though it had dismissed with prejudice the plaintiff's federal-law claims. As in *Blakely*, the parties had already argued the assault and battery claim on the merits before the district court. Moreover, as the district court observed, the assault and battery claim was both factually and legally intertwined with plaintiff McKenzie's federal excessive force claim. Thus, interests in judicial economy and fairness would dictate that defendant Truel not be required to "expend additional resources making the same arguments in state court." *Id.*

### III. Whether Collateral Estoppel Applies

Defendant Truel first raised the issue of collateral estoppel in this appeal both with respect to McKenzie's criminal conviction in connection with this incident and the district court's dismissal of the § 1983 claim. McKenzie was convicted of the reckless use of a firearm without due caution in a bench trial in state court. In

reaching that conviction, the circuit judge found that McKenzie was intoxicated; that as McKenzie spun around, "the gun did rise up as part of that spinning motion"; and that McKenzie "was facing the officer by the time that he was shot." McKenzie did not appeal his conviction. Truel did not raise the issue of collateral estoppel concerning McKenzie's criminal conviction before the district court, and we find no reason to entertain it on appeal. *See Golden v. Kelsey–Hayes, Co.,* 73 F.3d 648, 657–658 (6th Cir.1996) (We will deviate from the general rule that we will not hear issues raised for the first time on appeal only in exceptional circumstances, such as when compliance would result in a miscarriage of justice, when the issue is purely legal and both parties have fully briefed it, or when no doubt exists as to the issue's proper determination.); *cf. Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 554–555 (6th Cir.1998) (We will entertain an issue that the trial court did not address, even if the issue was properly before it, only when the issue's correct determination is "beyond doubt" or when "injustice might otherwise result.").[1]

---

**1.** With respect to the effect of McKenzie's criminal conviction on his state claim, it is unclear whether Michigan law, which ordinarily requires mutuality, would permit nonmutual, defensive, cross-over collateral estoppel. *Compare Howell v. Vito's Trucking & Excavating Co.,* 386 Mich. 37, 191 N.W.2d 313, 315–316 (1971) (collateral estoppel generally requires mutuality so that the litigants in the second suit must have been parties or privy to parties in the first suit), *and In re Forfeiture of $1,159,420,* 194 Mich.App. 134, 486 N.W.2d 326, 333 (1992) (requiring mutuality with the defensive use of collateral estoppel in a criminal to civil context), *with Lichon v. American Universal Ins. Co.,* 435 Mich. 408, 459 N.W.2d 288, 299 (1990) (observing that an exception to the mutuality requirement may be proper with the defensive use of collateral estoppel from a criminal conviction based upon a jury verdict to a civil action, but taking no position on the issue); *Knoblauch v.*

*Kenyon,* 163 Mich.App. 712, 415 N.W.2d 286, 290–292 (1987) (repudiating a strict mutuality requirement where a prior proceeding determined an issue that the plaintiff had a full and fair chance to litigate, the court distinguished *Howell,* a case involving non-mutual, *offensive* estoppel in a civil to civil context, from cases involving non-mutual, *defensive* estoppel in a criminal to civil context; yet, the court's holding may encompass only the non-mutual, defensive use of collateral estoppel to defeat a malpractice claim following a determination of effective assistance of counsel in a criminal action.); *Deitz v. Wometco West Michigan TV,* 160 Mich.App. 367, 407 N.W.2d 649, 656 (1987) (implicitly upholding the non-mutual, defensive use of collateral estoppel from a criminal to civil context); *and Carlton v. Pytell,* 986 F.2d 1421, 1993 WL 44514 at **4–5 (6th Cir.1993) (unpublished decision) (Michigan law created an exception to the general

■ We reject Truel's argument that McKenzie's failure to appeal the district court's award of summary judgment for Truel on the § 1983 excessive force claim precludes McKenzie from appealing the court's award of summary judgment for Truel on the assault and battery claim, even assuming *arguendo* that the claims entail the same factual or legal issues.[2] The collateral estoppel doctrine operates to bar re-litigation of an issue of fact or law in *"subsequent suits* based on a different cause of action involving a party to the prior litigation" when a court of competent jurisdiction has actually and necessarily determined that issue in a *prior* suit. *Hammer v. I.N.S.*, 195 F.3d 836, 840 (6th Cir.1999) (emphasis added); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (Per collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the

issue in a *suit on a different cause of action* involving a party to the *first case."*) (emphasis added). Thus, collateral estoppel ordinarily applies in the context of consecutive suits. Defendant has cited no case nor do we know of any holding that collateral estoppel applies to a different cause of action in the same suit or action. Indeed, the district court could not have applied collateral estoppel since the judgment on Truel's § 1983 liability was entered contemporaneous with the judgment appealed here.

## IV. Whether Truel Waived His Claim of Self–Defense

■ We reject plaintiff McKenzie's argument that defendant Truel waived any claim of self-defense because he failed to plead it as an affirmative defense in his answer to McKenzie's complaint. Self-defense is not one of the enumerated defenses under either the Federal Rule of Civil

2. mutuality requirement with criminal to civil cross-over; thus, the § 1983 plaintiff was collaterally estopped from re-litigating a search's validity as the state courts had already found the search valid in his criminal prosecution despite mutuality lacking between the defendant police officers and the state government in the criminal prosecution). Moreover, it is unclear whether Michigan law would recognize defendant Truel as a party or a privy to a party in McKenzie's criminal prosecution. *Compare Brown v. Wassus*, 2002 WL 483545, No. 226469 at * *1–2 (Mich.Ct.App.2002) (unpublished opinion) (mutuality lacking in case involving the offensive use of collateral estoppel from criminal and civil actions to a civil action where defendant police officers in state suit were neither parties nor privies to parties in the prior criminal prosecution or civil forfeiture action although they may have been witnesses), *with Webb v. City of Taylor*, 2002 WL 31947931 at **3–4 (Mich.Ct.App.2002) (affirming the defensive use of collateral estoppel from criminal to civil context and noting that the plaintiff did not dispute that the defendant police officers were parties in both the criminal prosecution and the subsequent § 1983 action).

2. We note-without deciding-that some case law suggests that the objective reasonableness of Officer Truel's actions based on the information that he had when the conduct occurred is the same basis for a defense to the § 1983 excessive force claim as it is for the assault and battery claim. *See Hall v. Township of Mount Morris*, 198 F.Supp.2d 906, 915, 920 (E.D.Mich.2002) (under Michigan law, "[t]he measure of necessary force is that which an ordinary, prudent and intelligent person with the knowledge and in the situation of the arresting officer would have deemed necessary"; under the Fourth Amendment, force is not excessive where it is objectively reasonable based upon the information that the officer had when the conduct occurred.); *Card v. City of Highland Park*, No. 230449, 2003 WL 21350239, at **3, 6 (Mich.Ct.App. June 10, 2003) (unpublished opinion) (treating the assault and battery and § 1983 excessive force claims under the same standard of objective reasonableness based on the totality of the circumstances from a reasonable officer's viewpoint and finding that the holding on the assault and battery claim equally applies to the excessive force claim).

Procedure 8(c) or the Michigan Court Rule 2.111. Rather, in support of his argument. McKenzie cursorily claims that Michigan Standard Jury Instruction 2d 115.05 [3] renders self-defense an affirmative defense. Due to the lack of compelling authority requiring self-defense to be pled as an affirmative defense, we decline to find that Truel waived a self-defense challenge by not affirmatively pleading it in his answer, especially since McKenzie had adequate notice of the self-defense ground so as to obviate any unfair surprise. *See Hindy v. Avedisian*, 339 Mich. 616, 64 N.W.2d 676, 677 (1954) (holding futile a reply by plaintiff to defendant's answer setting up "self-defense as an affirmative defense" where plaintiff had previously alleged that defendant's assault and battery was unprovoked). Both the briefs and arguments before the district court squarely focused on the self-defense aspects of the shooting. In his answer, Truel did plead the defense of governmental immunity. As a police officer, Truel was authorized to use reasonable force to effect an arrest and, unlike a civilian, was not required to retreat upon a display of force. *See Alexander v. Riccinto*, 192 Mich.App. 65, 481 N.W.2d 6, 8 (1991).

## V. The District Court Erred in Granting Summary Judgment on the Assault and Battery Claim

We review the district court's order granting summary judgment *de novo*. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). We must believe the non-moving party's evidence, and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, we must view the inferences that we draw from those underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A "material" fact is one "that might affect the outcome of the suit." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"An assault is any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Smith v. Stolberg*, 231 Mich. App. 256, 586 N.W.2d 103, 105 (1998). A battery is "the wilful and harmful or offensive touching of another person which results from an act intended to cause such contact." *Id.* Yet, "a police officer making a lawful arrest may use that force that is reasonable in self-defense circumstances and is not required to retreat before a display of force by the adversary ..." [4]

---

3. It defines self-defense as "[a] person who is assaulted may use such reasonable force as may be, or reasonably appears at the time to be, necessary to protect himself or herself from bodily harm in repelling the assault."

4. McKenzie contends that this case law is inapposite because Truel could not have been arresting McKenzie when Truel shot him as McKenzie had committed no crime. Yet, we refuse to hold, as this reasoning would require, that police officers, while in the course of approaching or investigating a suspect, cannot lawfully defend themselves from a threat of great danger that such an individual poses. Here, even if the domestic violence

*Riccinto*, 481 N.W.2d at 8. "[T]he officer must have a reasonable belief of great danger before responding with the appropriate amount of force to foreclose the threat." *Id.* "[W]hether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." *Gully v. City of Southfield*, No. 223080, 2001 WL 1422171, at *2 (Mich.Ct.App. Nov. 13, 2001) (citing *People v. Hanna*, 223 Mich.App. 466, 567 N.W.2d 12, 16 (1997)). The fact finder is to determine what constitutes a reasonable belief of great danger "on the basis of all the facts and circumstances as they appeared to the party at the time of the incident." *Alexander*, 481 N.W.2d at 8 (finding there that a genuine issue of material fact rendered summary judgment improper); *Brewer v. Perrin*, 132 Mich.App. 520, 349 N.W.2d 198, 202 (1984) (holding that "the measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officers, would have deemed necessary"). Although governmental immunity generally does not protect intentional torts, such as assault and battery, it protects governmental actions that would otherwise be intentional torts if those actions are justified. *Brewer*, 349 N.W.2d at 202.

Critical to whether Officer Truel's shooting was justified is whether plaintiff turned towards him so that plaintiff constituted an immediate threat to the officer's safety. The evidence on this issue is in conflict. In the early evening of May 15, 1998, Truel and his partner, James Hambright, responded to a domestic dispute reported as involving a man pointing a rifle at his mother's throat. A later dispatch informed the officers that the suspect was walking eastbound on Joy Road toward Hubbell street and was armed with a rifle. The police officers were in uniform and were driving a marked scout car. They identified plaintiff at the intersection of those two streets. According to Truel, McKenzie was holding the rifle's stock, which stuck out from his unbuttoned and untucked shirt, in his right hand, with the barrel under his shirt, tucked under his underarm. Plaintiff maintains that "he was carrying the rifle at all times with the stock partially under his shirt, the barrel extended beyond his shirt pointed down." Hambright testified that, at that time. McKenzie was carrying the weapon with the barrel facing down.

█ Plaintiff then turned into an alley. Both Truel and Hambright testified that they believed that plaintiff saw them before he turned into the alley although he looked at them with an unconcerned, blank expression on his face. Truel testified that plaintiff doubled his speed after entering the alley, walking quickly but not running. Gardner, a witness who observed the event from a vehicle outside of the alley, stated that McKenzie was walking slowly, "zombie-like." Truel pursued plaintiff on foot while Hambright parked the scout car. According to Truel, as Truel entered the alley, McKenzie looked over his shoulder at him, without moving the rifle. After unholstering his gun, Truel pointed it at McKenzie. According to Truel, when he was about twenty-five yards from McKenzie, he verbally identified himself as a police officer and ordered McKenzie to stop and drop his weapon. Later claiming that he only heard Truel say "stop," McKenzie conceded that "there was a lot of things going on," and "noise coming from all around" him. McKenzie also conceded

complaint did not afford Truel probable cause to arrest McKenzie, the complaint-along with the fact that McKenzie was walking down a public street with a rifle-clearly gave Truel cause to stop McKenzie for investigation.

that he continued to walk even though the person said "stop." According to Hambright, Truel told McKenzie to drop his weapon. Gardner stated that Truel ordered McKenzie to stop and turn around and that Truel neither identified himself as a police officer nor ordered McKenzie to drop his weapon. McKenzie also claims that Truel never identified himself as a police officer.

According to Truel, after he yelled the first time, McKenzie looked at him and took a few more steps, and then Truel, while standing still, yelled at McKenzie again: instead of dropping his weapon, plaintiff looked over his shoulder at Truel, used the hand that was not holding the weapon to open his shirt, under which the rifle barrel was located, and swung around, with the rifle pointing to the left at Truel. Truel claims that McKenzie turned around in Truel's direction so that the left side of McKenzie's body was facing or bladed towards Truel. Specifically, Truel claims that McKenzie's entire body moved and at least his head and the rifle continued to turn until it was pointing at Truel. According to Truel, McKenzie had the gun at hip or waist level, parallel to the ground. At that time, Truel fired multiple shots at McKenzie, who eventually fell to the ground after being shot. Hambright testified that, as he was parking the scout car, he could see only Truel, who was moving backwards just before the firing occurred, and that, upon approaching the alley, Hambright was first able to see plaintiff only as he was beginning to fall to the ground.

According to McKenzie, he heard only "stop," at which point he turned his head-not his torso-to the left to see who was yelling; at that moment, Truel began firing his weapon. Yet, elsewhere in the record, in demonstrating his movement, McKenzie turned his torso to the left to what his attorney described as "might be" forty-five degrees. McKenzie also seemed to concede that he had turned his body to some uncertain degree although he denied that he had turned it ninety degrees or all the way to the side. In his brief, McKenzie argues that this testimony was describing the "slight turn of a torso that is made when a person looks over his shoulder and behind him." McKenzie contends that he never pointed his rifle at Truel and that the barrel was pointed down when Truel shot him. However, in McKenzie's unsigned statement to police following the incident-which McKenzie does not recall ever making McKenzie stated that, as he "turned around with the rifle in ... [his] hand toward the police, that's when ... [he] got shot."

Two civilian witnesses testified about the shooting. Gardener testified that plaintiff was only looking over his shoulder and was about to turn around when Truel started shooting. He conceded that he had previously testified that plaintiff had "turned." He also testified that the barrel was facing the ground from underneath plaintiff's coat. Freeman, another witness, testified that, after Truel yelled something at plaintiff, plaintiff "turned around and—he swung around," and then Truel shot him. She also testified that plaintiff never pointed the rifle directly at Truel although it went up a little bit as plaintiff turned, and that plaintiff was completely facing Truel when he was shot.

There is also a dispute as to what occurred after plaintiff fell to the ground. Truel testified that plaintiff retained possession of the gun and pointed it at Truel, at which time Truel emptied his gun. Hambright testified that plaintiff had the gun in his hand as he was falling but that, when plaintiff fell to the ground, the gun fell out of his hand, landing within his reach. Hambright testified that he never

saw McKenzie move and touch the rifle again. Gardner testified that, as plaintiff fell to the ground, the gun fell to his side, and that as plaintiff was "trying to roll over or something," raising his left shoulder off the ground, the second volley of shots occurred.

During the incident, which lasted only a matter of seconds, Truel fired sixteen bullets. McKenzie did not fire. McKenzie suffered two wounds. The wound to McKenzie's left leg entered on the outside of the knee and exited on the inside of the knee. The wound to his back was a grazing wound. Neither Truel nor the plaintiff was able to specify which of the bullets struck plaintiff and which wound he received first. According to both Truel and McKenzie, McKenzie was likely shot in the leg while he was standing.

Where the witnesses' accounts conflict, determinations of credibility are paramount. rendering summary judgment improper. Although the district court found that there were issues of fact as to what exactly occurred, it held that there was no genuine issue of material fact as to whether plaintiff turned forty-five degrees toward Truel. In reaching its decision, the district court relied on plaintiff's demonstration in which his lawyer described plaintiff as turning his torso to what *might be* forty-five degrees and the conclusion that, while McKenzie was standing, the bullet only grazed his back. However, the evidentiary significance of this demonstration is in dispute, and no evidence exists to establish that McKenzie received the shot to his back while he was standing, as opposed to lying on the ground. While there is evidence that McKenzie had turned his body toward Truel, there is also substantial evidence that McKenzie had not turned his body. Thus, we cannot agree that the facts regarding whether plaintiff turned are undisputed. Even more in dispute are the facts concerning exactly what occurred after plaintiff fell to the ground. There is considerable conflict as to whether McKenzie was holding the rifle and pointing it at Truel or whether, if the rifle were laying on the ground within McKenzie's reach, McKenzie moved in such a way as to pose an immediate threat to Truel's safety. Moreover, it is unclear whether plaintiff was struck during the second volley after he fell to the ground, particularly concerning the wound to his back. Given these genuine issues of material fact, we reverse the district court's grant of summary judgment in favor of defendant Truel and remand to the district court for trial.